1999 ND 175

**Donald JOSE and Carol Beiswanger, Plaintiffs and Appellants,**

v.

**NORWEST BANK NORTH DAKOTA, N.A., and Pamela Anderson, Defendants and Appellees.**

No. 990080.

Supreme Court of North Dakota.

Aug. 30, 1999.

Deborah J. Carpenter, Carpenter Law Offices, Bismarck, ND, for plaintiffs and appellants.

Charles L. Chapman, Chapman & Chapman, Bismarck, ND, for defendants and appellees.

NEUMANN, Justice.

[¶ 1] Donald Jose and Carol Beiswanger appealed from a summary judgment dismissing their action against Norwest Bank North Dakota, N.A. (Norwest) for breach of employment contracts, wrongful termination, and defamation. We conclude there are no genuine issues of material fact and we affirm.

I

[¶ 2] Jose and Beiswanger worked in the trust department of Norwest in Bismarck. Jose, who had been employed with Norwest more than five years when terminated, worked with business and employee benefit trust accounts. Beiswanger, who had been employed with Norwest almost 20 years when terminated, worked with personal trust accounts. Both Jose and Beiswanger worked under the direction of Terrence Ness.

[¶ 3] About five months before their termination, Jose and Beiswanger expressed their concerns to Norwest's human resources employees about the work performance of Ness and his supervisor, Pamela Anderson, who worked in Norwest's Fargo office. According to Jose and Beiswanger, Norwest's president in Bismarck, Paul Kadavy, inquired about Ness's job performance with them and human resources employees. Jose and Beiswanger claim they "reluctantly" participated with Kadavy in an investigation of Ness and Anderson concerning their "work performance issues." They felt uncomfortable about their job security for cooperating in the investigation. Jose and Beiswanger were assured by Kadavy and human resources employees they would be protected from adverse action. They became particularly concerned about their job security when Kadavy left his position with Norwest in Bismarck to take a position in Las Vegas, Nevada. They believed Ness and Anderson were "looking for a reason to get rid" of them.

[¶ 4] On May 24, 1996, Jose and Beiswanger were alone in Ness's office with his permission for a work-related telephone conference. Beiswanger was seated behind Ness's desk and Jose was seated across from her, but the office remained open to other Norwest personnel who would enter with papers for filing. During the conference call, Beiswanger pulled open an unlocked drawer to rest her foot on it, and in the drawer Beiswanger discovered a file with her name on it and a file with Jose's name on it. After reviewing the contents of their files, Jose and Beiswanger returned them to the drawer. Beiswanger believed she had permission to view the materials in Ness's desk, and she had routinely done so in the past to find materials for clients.

[¶ 5] When Beiswanger returned to work from vacation on June 3, 1996, she and

Jose were confronted about the file incident and placed on immediate suspension pending an investigation. On June 5, 1996, Jose and Beiswanger admitted to Norwest personnel they entered Ness's desk without express permission. Norwest terminated them for viewing their files in Ness's office, terming their misconduct as "breach of trust" and "breach of the code of ethics." Norwest circulated a memorandum to all Norwest staff titled "Staff Changes," which said: "This is to inform you that as of today, Don Jose and Carol Beiswanger are no longer employed at Norwest. Please refer any questions related to trust accounts and/or clients to Terry Ness." Believing they were terminated by Norwest in retaliation for their participation in Norwest's investigation into the trust department and the work performance of Ness and Anderson, Jose and Beiswanger sued Norwest alleging breach of their employment contracts, wrongful termination, and defamation.

[¶ 6] The trial court granted Norwest's motion for summary judgment dismissing the action. The trial court ruled there was no breach of an employment contract because Jose and Beiswanger were at will employees of Norwest. The court ruled there was no wrongful termination because their termination was not "a result of participation in lawful activity off the employer's premises during nonworking hours." The court also ruled Jose and Beiswanger presented no evidence to support their defamation claim. Jose and Beiswanger appealed.

## II

[¶ 7] Summary judgment under N.D.R.Civ.P. 56 is a procedural device for properly disposing of a lawsuit without trial if, after viewing the evidence in a light most favorable to the non-moving party, there are no genuine issues of material fact or conflicting inferences which can reasonably be drawn from undisputed facts, or if the only issues to be resolved are questions of law. *Opp v. Source One Management, Inc.*, 1999 ND 52, ¶ 15, 591 N.W.2d 101. If the moving party meets its initial burden of showing the absence of a genuine issue of material fact, the non-moving party may not rely on mere allegations, but must present competent evidence by affidavit or other comparable means creating a material factual dispute. *Norwest Mortgage, Inc. v. Nevland*, 1999 ND 51, ¶ 4, 591 N.W.2d 109. Summary judgment is proper against a party who fails to make a showing sufficient to establish the existence of an element essential to the party's case and on which that party will bear the burden of proof at trial. *Hurt v. Freeland*, 1999 ND 12, ¶ 8, 589 N.W.2d 551.

[¶ 8] For purposes of this appeal, we view the evidence in the light most favorable to Jose and Beiswanger. Although Norwest disputes that its stated reasons of "breach of trust" and "breach of the code of ethics" for terminating Jose and Beiswanger were merely a pretext, we accept as true Jose and Beiswanger's allegation Norwest actually terminated them in retaliation for participating in the investigation of the job performances of Ness and Anderson.

### A

■ [¶ 9] Jose and Beiswanger allege their termination was in violation of the terms of their employment contracts with Norwest.

■ [¶ 10] In North Dakota, employment without a definite term is presumed to be at will. *Osterman–Levitt v. Med-Quest, Inc.*, 513 N.W.2d 70, 72 (N.D.1994). The employment-at-will doctrine is codified at N.D.C.C. § 34–03–01, which provides "[a]n employment having no specified term may be terminated at the will of either party on notice to the other, except when otherwise provided by this title." In an at-will employment situation, the employer can terminate the employee with or without cause. *Phillips v. Dickinson Management, Inc.*, 1998 ND 123, ¶ 7, 580 N.W.2d 148.

[¶ 11] The parties by contract can overcome the at-will presumption and create enforceable employment rights. *Hougum v. Valley Memorial Homes*, 1998 ND 24, ¶ 31, 574 N.W.2d 812. When an employer promulgates a manual of personnel policies, the entire manual will be examined to determine whether it discloses an intent to overcome the at-will presumption. *Eldridge v. Evangelical Lutheran Good Samaritan Society*, 417 N.W.2d 797, 799 (N.D.1987). If it does, an employer may be contractually bound by promises, express or implied, in the employee manual with respect to job security and termination procedures. *Bailey v. Perkins Restaurants, Inc.*, 398 N.W.2d 120, 122 (N.D. 1986). An explicit and conspicuous disclaimer in an employee personnel manual, stating no contract rights exist or the policies in it are not intended to create contractual rights, demonstrates the employer's intent the manual be only a guide for the employee. *Olson v. Souris River Telecommunications*, 1997 ND 10, ¶ 13, 558 N.W.2d 333; *Schmidt v. Ramsey County*, 488 N.W.2d 411, 413 (N.D.Ct.App.1992). If the intention of the parties can be ascertained from the terms of the personnel manual alone, its interpretation is a question of law. *Bykonen v. United Hospital*, 479 N.W.2d 140, 142 (N.D.1992).

[¶ 12] Norwest's employee manual contains a large-type, bold-face heading "Important Information Concerning Employment Policies And Your Employment," informing employees:

> The Employment Policies were adopted by your Norwest subsidiary to help you understand some of the personnel policies and procedures that affect your employment. Please note that our policies and procedures change from time to time. We plan to publish periodic updates to keep you informed of changes; however, we may implement some changes immediately without advance notice.

In the next paragraph, Norwest informed its employees in a bold-print statement:

> The Employment Policies are not a contract of employment. We recognize our employees' right to resign at any time for any reason; similarly we may terminate any employee at any time, with or without cause and with or without notice.

[¶ 13] In depositions, both Jose and Beiswanger testified they understood Norwest could terminate them with or without cause and they were subject to an at-will employment relationship. They do not claim they were hired for a definite term. Having reviewed Norwest's employment policies, we find nothing to rebut the presumption of at-will employment explicitly and conspicuously retained by Norwest. We conclude, as a matter of law, the employment policies did not become an enforceable employment agreement between Norwest and Jose and Beiswanger.

[¶ 14] Jose and Beiswanger contend the contract principle of good faith and fair dealing should nevertheless apply in an employment situation. In the past we have rejected attempts to engraft an implied covenant of good faith and fair dealing into the employment context. *See Aaland v. Lake Region Grain Co-op.*, 511 N.W.2d 244, 247 (N.D.1994); *Krein v. Marian Manor Nursing Home*, 415 N.W.2d 793, 795 (N.D.1987); *Sadler v. Basin Elec. Power Co-op.*, 409 N.W.2d 87, 89 (N.D. 1987); *Hillesland v. Federal Land Bank Ass'n*, 407 N.W.2d 206, 215 (N.D.1987). Jose and Beiswanger have presented no persuasive argument to have us revisit those holdings, and we reject their argument.

[¶ 15] We conclude the trial court did not err in dismissing the breach of contract claim.

B

[¶ 16] In their claim for wrongful termination, Jose and Beiswanger allege they were discharged for having engaged in protected activity, and public policy de-

mands they should have a remedy for Norwest's conduct in this case.

[¶ 17] Although employment without a definite term is presumed to be at will, giving the employer the right to terminate an employee with or without cause, there are exceptions to the at-will doctrine. *See Fatland v. Quaker State Corp.*, 62 F.3d 1070, 1072 (8th Cir.1995) (applying North Dakota law). This Court has recognized public policy exceptions to the at-will employment doctrine. In *Ressler v. Humane Society of Grand Forks*, 480 N.W.2d 429, 432 (N.D.1992), we held public policy prohibits an employer from discharging an employee for honoring a subpoena and for testifying truthfully. Likewise, in *Krein*, 415 N.W.2d at 794, this Court held public policy prohibits retaliatory discharge of an employee for seeking workers compensation benefits. However, in *Ressler*, 480 N.W.2d at 431, and *Krein*, 415 N.W.2d at 794, we noted public policy must be evidenced by a constitutional or statutory provision, and statutes in those cases expressed clear and compelling public policies against the challenged discharges. *Compare Lee v. Walstad*, 368 N.W.2d 542, 547 (N.D.1985) (holding no public policy exception to at-will employment would be recognized where claimant "defined no clear public policy which his removal violates").

[¶ 18] To support their public policy argument, Jose and Beiswanger rely on N.D.C.C. § 14–02.4–03, which provides in part, "[i]t is a discriminatory practice for an employer ... to discharge an employee ... because of ... participation in lawful activity off the employer's premises during nonworking hours which is not in direct conflict with the essential business-related interests of the employer." We fail to see how this statute presents a clear public policy against retaliatory discharge for participating in an internal investigation of other employees' job performances. We agree with the trial court there is no suggestion the termination of Jose and Beiswanger was the result of participation in lawful activity off Norwest's premises during nonworking hours.

[¶ 19] Jose and Beiswanger also rely on the "whistleblower" provision of the Federal Deposit Insurance Act, 12 U.S.C. § 1831j(a)(1), which states:

(a) In general

(1) Employees of depository institutions

No insured depository institution may discharge or otherwise discriminate against any employee with respect to compensation, terms, conditions, or privileges of employment because the employee (or any person acting pursuant to the request of the employee) provided information to any Federal Banking agency or to the Attorney General regarding—

(A) a possible violation of any law or regulation; or

(B) gross mismanagement, a gross waste of funds, an abuse of authority, or a substantial and specific danger to public health or safety;

by the depository institution or any director, officer, or employee of the institution.

[¶ 20] The obvious purpose of this federal "whistleblower" legislation is to protect the nation's banking system through protection of employees in the banking industry who disclose to banking agencies information concerning violations of law, gross waste of funds, gross mismanagement, or abuse of authority. *See Nowlin v. Resolution Trust Corp.*, 33 F.3d 498, 502 (5th Cir.1994). Jose and Beiswanger do not claim, nor have we found anything in the record to indicate, their participation in the investigation of Ness and Anderson had anything to do with violations of law, gross waste of funds, gross mismanagement, or abuse of authority. Nor do they allege they disclosed anything to federal banking agencies. Rather, they participated in an internal job performance investigation. The federal "whistleblower" statute does not protect such an investigation.

[¶ 21] Jose and Beiswanger invite us to create a public policy exception forbidding retaliatory discharge for participating in internal employee investigations. We decline to do so. As we noted in *Ressler,* public policy generally must be evidenced by a constitutional or statutory provision. Because Jose and Beiswanger have defined no clear public policy which their removal violates, *see* N.D.C.C. § 34-01-20, we conclude the trial court did not err in rejecting their wrongful termination claim.

### C

[¶ 22] Jose and Beiswanger allege the "Staff Changes" memorandum informing Norwest employees of their termination and the "breach of trust" and "breach of the code of ethics" reasons formally given by Norwest for their termination defamed them.

[¶ 23] Every person has the right of protection from defamation. *Moritz v. Medical Arts Clinic, P.C.,* 315 N.W.2d 458, 460 (N.D.1982). Under N.D.C.C. ch. 14-02, defamation is classified as either libel or slander. Libel is "a false and unprivileged publication by writing . . . which has a tendency to injure the person in the person's occupation." N.D.C.C. § 14-02-03. Slander is "a false and unprivileged publication other than libel, which . . . [c]harges any person with crime . . . [or][t]ends directly to injure the person in respect to the person's office, profession, trade, or business, . . . by imputing to the person general disqualifications in those respects which the office or other occupation peculiarly requires." N.D.C.C. § 14-02-04(1) and (3).

[¶ 24] We reject Jose and Beiswanger's contention the "Staff Changes" memorandum Norwest circulated to its employees created an action for defamation. The memorandum stated: "This is to inform you that as of today, Don Jose and Carol Beiswanger are no longer employed at Norwest. Please refer any ques-

tions related to trust accounts and/or clients to Terry Ness." To be defamatory, a statement must be false. *Meier v. Novak,* 338 N.W.2d 631, 635 (N.D.1983). Jose and Beiswanger were terminated, and any inferences from the innocuous memorandum which may have been drawn by third parties as a result of the termination does not make the termination defamatory. *See Sadler,* 409 N.W.2d at 89; *Gowin v. Hazen Memorial Hospital Ass'n,* 349 N.W.2d 4, 10 (N.D.1984).

[¶ 25] Moreover, there is no liability for defamatory statements that are privileged. *Richmond v. Nodland,* 552 N.W.2d 586, 588 (N.D.1996). An employer may have a qualified privilege with regard to certain communications. *See Soentgen v. Quain & Ramstad Clinic, P.C.,* 467 N.W.2d 73, 78-79 (N.D.1991). Under N.D.C.C. § 14-02-05(3), a privileged communication is one made "[i]n a communication, without malice, to a person interested therein by one who also is interested, or by one who stands in such relation to the person interested as to afford a reasonable ground for supposing the motive for the communication innocent, or who is requested by the person interested to give the information." Here, the communication from Norwest to its employees advising them that Jose and Beiswanger were no longer employed at Norwest certainly constituted a communication between persons of common interest. If a customer of either Jose or Beiswanger called Norwest asking for them, other employees needed to know they were no longer employed there so confusion within the bank and disservice to customers could be avoided. We conclude, as a matter of law, Norwest's memorandum to its employees about Jose and Beiswanger's termination presented no ground for a defamation action.

[¶ 26] Jose and Beiswanger also claim defamation because they were forced to inform prospective employers that they were terminated for "breach of trust" and "breach of the code of ethics," allegations implying either criminal activity or dis-

qualification for their positions, and Norwest should have reasonably foreseen that prospective employers would demand this information.

[¶ 27] Allegedly defamatory matter communicated to a third party is a publication. *Emo v. Milbank Mutual Insurance Company*, 183 N.W.2d 508, 512 (N.D.1971). Publication is required for libel or slander to be actionable. *Pulkrabek v. Sletten*, 557 N.W.2d 225, 228 (N.D.1996). This Court has not specifically addressed whether the element of publication in a defamation case is satisfied when an employee is compelled to disclose to a prospective employer the reason given for termination by a former employer. There is a split of authority on the issue in other jurisdictions.

[¶ 28] The general rule is when a person communicates defamatory statements only to the person defamed, who then repeats the statements to others, the publication of the statements by the person defamed will not support a defamation action against the originator of the statements. *See* Annot., *Publication of allegedly defamatory matter by plaintiff ("self-publication") as sufficient to support defamation action*, 62 A.L.R.4th 616, 622 (1988). However, some courts have ruled self-publication in the employment setting satisfies the publication requirements of defamation because the plaintiff is effectively compelled to publish the defamatory material to prospective employers, and therefore, the self-publication is reasonably foreseeable by the former employer. *See, e.g., McKinney v. County of Santa Clara*, 110 Cal.App.3d 787, 168 Cal.Rptr. 89 (1980); *Munsell v. Ideal Food Stores*, 208 Kan. 909, 494 P.2d 1063 (1972); *Lewis v. Equitable Life Assur. Soc.*, 389 N.W.2d 876 (Minn.1986); *Downs v. Waremart, Inc.*, 137 Or.App. 119, 903 P.2d 888 (1995). Other courts have refused to recognize self-publication as constituting publication for defamation purposes, even when the publication is compelled in the employment setting. *See, e.g., Gore v. Health-Tex, Inc.*, 567 So.2d 1307 (Ala.1990); *Layne v. Builders Plumbing Supply Co.*, 210 Ill.App.3d 966, 155 Ill.Dec. 493, 569 N.E.2d 1104 (1991); *Yetter v. Ward Trucking Corp.*, 401 Pa.Super. 467, 585 A.2d 1022 (1991); *Sullivan v. Baptist Memorial Hospital*, 995 S.W.2d 569, 1999 WL 476978 (Tenn.1999). Courts have rejected the doctrine of compelled self-publication based on public policy reasons, including the public's interest in open communication about employment information and limiting the scope of defamation liability. We need not decide in this case whether to adopt the doctrine of compelled self-publication, because Jose and Beiswanger failed to present evidence to support the elements necessary to apply the doctrine.

[¶ 29] In *Downs*, 903 P.2d at 896, the court ruled a plaintiff may assert a claim for compelled self-publication defamation in the employment context when: "(1) the defendant employer makes a defamatory statement to the plaintiff employee; (2) it was reasonably foreseeable to the defendant that the plaintiff would be under a strong compulsion to disclose the content of that statement to prospective employers; (3) the plaintiff, *under compulsion,* communicates the defamatory statement to a prospective employer; and (4) because of that communication, the plaintiff was damaged." (Emphasis in original).

[¶ 30] In this case, the record shows Beiswanger did not communicate to any prospective employer the alleged defamatory reasons of "breach of trust" and "breach of the code of ethics" Norwest gave her for termination. Beiswanger testified in a deposition she told prospective employers "there had been an internal investigation that I had participated in and that ... due to lack of respect on my part, I looked at a file in a drawer and that I had—which had been discovered, and I

admitted to looking at this file and had been dismissed because of that."

[¶ 31] Jose testified in a deposition:

Q. Have you, yourself, used that term in talking with any potential employers? Have you said, "I was fired for breach of trust"?

A. I don't recall.

Q. Now, are you saying that you don't remember whether you did it or are you saying you didn't do it?

A. I don't recall whether I used the term in talking to an employer; no.

. . . .

Q. Have you explained to your employers why you were fired at Norwest?

A. Yes, I have.

Q. And what have you told them? First of all, let me ask you this: When you were hired at Kirkwood Bank, did you explain to somebody at Kirkwood Bank why you were fired at Norwest?

A. Yes.

Q. And what did you tell them?

A. Basically, we reran the entire investigation and the look in the file and, I do believe, disclosed the terms—the reasons that the—the two reasons that were used, violation of code of ethics and breach of trust.

. . . .

Q. And who did you talk to at Kirkwood Bank?

A. Gerald Willer.

Q. And you explained to Mr. Willer that you had looked into the file that had been taken out of Terry Ness's desk.

A. That's correct.

Q. And Gerald Willer, of course, is the one that hired you as a trust officer, is he not?

A. That is correct.

Q. Did you explain to any other employers the reason for your termination? I'm sorry. Any other potential employers the reason for your termination.

A. I know it was discussed. I couldn't cite exactly who and who not, depending on the degree of discussions we had got into.

Q. As you sit here today, can you recall any people to whom you talked about the reason for your termination?

A. No.

Although Jose testified he mentioned "breach of trust" and "breach of the code of ethics" to one prospective employer, even if we assume there was "compulsion" from this equivocal testimony, the prospective employer to whom Jose communicated the allegedly defamatory reasons hired Jose. Therefore, there is no inference of damage arising from that communication.

[¶ 32] Because Jose and Beiswanger failed to present evidence supporting the elements necessary to establish a claim of compelled self-publication, we conclude the trial court did not err in dismissing this defamation claim.

## III

[¶ 33] We conclude there are no genuine issues of material fact precluding summary judgment. The summary judgment is affirmed.

[¶ 34] VANDE WALLE, C.J., MARING and KAPSNER, JJ., and JOHN C. McCLINTOCK, D.J., concur.

[¶ 35] JOHN C. McCLINTOCK, JR., D. J., sitting in place of SANDSTROM, J., disqualified.