2013 ND 136

**John SCHMITT, M.D., Plaintiff
and Appellant**

v.

**MERITCARE HEALTH SYSTEM,
Dakota Clinic, Ltd., and Innovis
Health LLC, Defendants**

MeritCare Health System, Appellee.

No. 20130013.

Supreme Court of North Dakota.

July 22, 2013.

Bruce A. Schoenwald, Moorhead, MN, for plaintiff and appellant.

Ronald H. McLean (argued) and Peter W. Zuger (on brief), Fargo, N.D., for defendant and appellee.

SANDSTROM, Justice.

[¶ 1] John Schmitt, M.D., appeals from a summary judgment dismissing his claims against MeritCare Health System for defamation, tortious interference with a prospective business advantage, and violation of state antitrust law. We conclude Dr. Schmitt's conclusory allegations about MeritCare's conduct and responses to a credentialing questionnaire by a Dickinson hospital do not raise factual issues on his claims, and we affirm the summary judgment.

I

[¶ 2] Dr. Schmitt was employed as a physician and surgeon by Dakota Clinic from August 2002 until his contract was not renewed in December 2004, and he was employed by MeritCare from June 2005 until he terminated his employment effective July 2007. Dr. Schmitt claimed he thereafter contracted with a physician placement agency, Weatherby Locums, Inc., to provide locums tenens—temporary—physician services, which, subject to credentialing requirements, resulted in a job offer at St. Joseph's Hospital in Dickinson. Dr. Schmitt's application for employment with St. Joseph's included a release from liability for "any and all individuals, entities, or organizations who provide [St. Joseph's] in good faith and without malice, information concerning [Schmitt's] professional competence, ethics, character, health status, other qualifications and ability to work cooperatively with others."

[¶ 3] According to Dr. Schmitt, Dakota Clinic responded "[d]o not recommend" to a credentialing questionnaire from St. Joseph's, and MeritCare would not respond to the credentialing questionnaire until Dr. Schmitt signed a separate authorization granting MeritCare immunity from liability for release of information. Dr. Schmitt claimed he initially refused to sign MeritCare's release, but he signed the authorization under duress after he learned St. Joseph's had rescinded a locums tenens offer to him. The release authorized MeritCare to provide St. Joseph's:

with any and all information and documentation requested regarding my professional qualifications, employment with MeritCare Health System and/or fitness for the position sought. This authorization specifically includes, but is not limited to, any and all information and documentation relating to my clinical competence, my professional conduct, and any other information that bears upon my ability to perform in my professional capacity, including information that may be otherwise considered to be peer review activities, during my tenure on the Medical Staff at Merit-Care Hospital or in the employment of MeritCare Medical Group.

I hereby extend absolute immunity to, release from any and all liability, and agree not to sue or bring any other

claim against, MeritCare Hospital, MeritCare Medical Group, MeritCare Health System, their related entities, and/or their medical staff, employees, directors, officers, agents or representatives for (1) providing the above information and documentation, and/or (2) any other action that may result from the provision of that information and documentation.

[¶ 4] MeritCare thereafter responded to preprinted questions on the credentialing questionnaire, stating Dr. Schmitt's appointment at MeritCare had never been denied or voluntarily revoked, he had not voluntarily or involuntarily changed medical staff membership or surrendered clinical privileges, his practice at MeritCare had never been investigated or subject to monitoring requirements as a result of quality determinations, he had not been named in a professional liability or medical malpractice case while at MeritCare, and he had not been a defendant in a felony criminal matter. In response to a request for a recommendation, MeritCare checked a box that it "[w]ould recommend" with a handwritten note stating "with reservation." MeritCare's response to the questionnaire also answered "yes" to a question about whether Dr. Schmitt had any disciplinary actions at MeritCare and explained:

> Dr. Schmitt was presented with an action plan based on episodes of insensitive comments and irritability with others. He submitted his resignation before completing the action plan. No restriction or limitation of privileges was suggested by the action plan.

Dr. Schmitt claimed that after MeritCare responded to the questionnaire, St. Joseph's did not re-offer him employment, and he was denied employment at other medical facilities in North Dakota and Minnesota.

[¶ 5] Dr. Schmitt sued MeritCare and Dakota Clinic under several theories of liability, seeking damages resulting from his inability to secure medical staff privileges because of MeritCare's allegedly defamatory statements and other wrongful conduct. The district court granted summary judgment dismissing all Dr. Schmitt's claims against MeritCare, including his claims for defamation and tortious interference with a prospective business advantage, and his state antitrust claims against MeritCare and Dakota Clinic. The district court decided Dr. Schmitt's separate authorization for MeritCare to answer the credentialing questionnaire was void under N.D.C.C. § 9-08-02 and *Granger v. Deaconess Hosp.*, 138 N.W.2d 443 (N.D. 1965). The court concluded, however, there were no issues of material fact on Dr. Schmitt's defamation claim against MeritCare, because MeritCare's responses to the questionnaire that it "[w]ould recommend with reservation" with the explanation for those reservations were based on truthful, nondefamatory facts disclosed in the questionnaire and were not fairly susceptible of a defamatory meaning in view of his admission the statements were "technically true." The court decided there were no issues of material fact on Dr. Schmitt's claim against MeritCare for tortious interference with a prospective business advantage, because after dismissal of the defamation claim, there was no independent tortious or otherwise unlawful conduct under *Trade 'N Post, L.L.C. v. World Duty Free Americas, Inc.*, 2001 ND 116, ¶ 42, 628 N.W.2d 707. The court also concluded there were no facts upon which a jury could conclude Dakota Clinic and MeritCare engaged in either a contract, combination, or conspiracy under Dr. Schmitt's state antitrust claim against MeritCare. Dr. Schmitt thereafter settled his remaining claims against Dakota Clin-

ic, and a final judgment was entered dismissing his lawsuit.

[¶ 6] The district court had jurisdiction under N.D. Const. art. VI, § 8, and N.D.C.C. § 27–05–06. Dr. Schmitt's appeal is timely under N.D.R.App.P. 4(a). This Court has jurisdiction under N.D. Const. art. VI, §§ 2 and 6, and N.D.C.C. § 28–27–01.

## II

[¶ 7] Under N.D.R.Civ.P. 56(c), summary judgment "shall be rendered if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." This Court's standard for reviewing summary judgments is well established:

Summary judgment is a procedural device for the prompt resolution of a controversy on the merits without a trial if there are no genuine issues of material fact or inferences that can reasonably be drawn from undisputed facts, or if the only issues to be resolved are questions of law. A party moving for summary judgment has the burden of showing there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. In determining whether summary judgment was appropriately granted, we must view the evidence in the light most favorable to the party opposing the motion, and that party will be given the benefit of all favorable inferences which can reasonably be drawn from the record. On appeal, this Court decides whether the information available to the district court precluded the existence of a genuine issue of material fact and entitled the moving party to judgment as a matter of law. Whether the district court properly granted summary judgment is

a question of law which we review de novo on the entire record.

*Wenco v. EOG Resources, Inc.*, 2012 ND 219, ¶ 8, 822 N.W.2d 701 (quoting *Arndt v. Maki*, 2012 ND 55, ¶ 10, 813 N.W.2d 564).

[¶ 8] A party resisting a summary judgment motion cannot merely rely on the pleadings, briefs, or unsupported and conclusory allegations. *Mr. G's Turtle Mountain Lodge, Inc. v. Roland Twp.*, 2002 ND 140, ¶ 22, 651 N.W.2d 625.

The resisting party must present competent admissible evidence by affidavit or other comparable means which raises an issue of material fact and must, if appropriate, draw the court's attention to relevant evidence in the record by setting out the page and line in depositions or other comparable documents containing testimony or evidence raising an issue of material fact.

*Id.* (quoting *Anderson v. Meyer Broad. Co.*, 2001 ND 125, ¶ 14, 630 N.W.2d 46). Summary judgment is appropriate when a party fails to establish the existence of a factual dispute on an essential element of that party's claim on which the party will bear the burden of proof at trial. *Mr. G's Turtle Mountain Lodge*, at ¶ 23. When no pertinent evidence on an essential element is presented to the district court in opposition to a motion for summary judgment, it is presumed no such evidence exists. *Id.* Issues of fact become issues of law if reasonable persons could reach only one conclusion from the facts. *Saltsman v. Sharp*, 2011 ND 172, ¶ 5, 803 N.W.2d 553; *Heng v. Rotech Med. Corp.*, 2004 ND 204, ¶ 10, 688 N.W.2d 389.

## III

[¶ 9] Dr. Schmitt argues the district court erred in granting summary judgment dismissing his defamation claim against MeritCare. He contends MeritCare's responses to the credentialing ques-

tionnaire, although perhaps technically true, constitute defamation by implication because they used innuendo, insinuation, or sarcasm to convey an untrue and defamatory meaning.

[¶ 10] MeritCare counters Dr. Schmitt's separate authorization for Merit-Care to respond to the credentialing questionnaire relieved it of any liability for its responses and the district court erred in deciding the authorization was void under N.D.C.C. § 9–08–02. MeritCare also argues its responses to the questionnaire were not capable of a defamatory meaning and its alleged failure to provide a timely response was not defamation by implication. MeritCare further contends Dr. Schmitt failed to raise a genuine issue of fact about a causal connection between the responses and St. Joseph's decision not to hire him. MeritCare also argues it is immune from liability under N.D.C.C. § 34–02–18(2) and has a qualified privilege for its responses to the questionnaire under N.D.C.C. § 14–02–05(3) and *Soentgen v. Quain & Ramstad Clinic, P.C.,* 467 N.W.2d 73, 77–80 (N.D.1991).

■■ [¶ 11] Under N.D. Const. art. I, § 4, every person "may freely write, speak and publish his opinions on all subjects, being responsible for the abuse of that privilege." *See, e.g., Moritz v. Medical Arts Clinic, P.C.,* 315 N.W.2d 458, 459 (N.D.1982). Every person has a right to be protected from defamation, which is classified as either libel or slander under N.D.C.C. § 14–02–02. *See Bertsch v. Duemeland,* 2002 ND 32, ¶ 11, 639 N.W.2d 455; *Jose v. Norwest Bank,* 1999 ND 175, ¶ 23, 599 N.W.2d 293. Libel is "a false and unprivileged publication by writing . . . which has a tendency to injure the person in the person's occupation." N.D.C.C. § 14–02–03. A publication must be false to be defamatory. *Bertsch,* at ¶ 11; *Jose,* at ¶ 24; *Eli v. Griggs County Hosp. and Nursing Home,* 385 N.W.2d 99, 101 (N.D. 1986); *Meier v. Novak,* 338 N.W.2d 631, 635 (N.D.1983). *See* N.D. Const. art. I, § 4 ("In all civil and criminal trials for libel the truth may be given in evidence, and shall be a sufficient defense when the matter is published with good motives and for justifiable ends."). Statements that are "technically true" on their face, however, may constitute civil libel if they use innuendo, insinuation, or sarcasm to convey an untrue and defamatory meaning. *Mr. G's Turtle Mountain Lodge,* 2002 ND 140, ¶ 33, 651 N.W.2d 625. *See Moritz,* at 460.

■ [¶ 12] When a communication is not libelous on its face and involves claims of a defamatory innuendo or insinuation, the court must decide whether the communication is capable of a particular meaning and whether that meaning is defamatory. *Mr. G's Turtle Mountain Lodge,* 2002 ND 140, ¶ 34, 651 N.W.2d 625; *Moritz,* 315 N.W.2d at 460. In *Moritz,* at 460, this Court quoted Restatement (Second) of Torts § 614 about the respective roles of the court and the jury:

"(1) The court determines

"(a) whether a communication is capable of bearing a particular meaning, and

"(b) whether that meaning is defamatory.

"(2) The jury determines whether a communication, capable of a defamatory meaning, was so understood by its recipient."

In comment (b) to this section it is said:

"Under the rule stated in this Section, the determination of the first two of these questions is for the court and that of the third for the jury. The court determines whether the communication is capable of bearing the meaning ascribed to it by the plaintiff and whether the meaning so ascribed is defamatory

in character. If the court decides against the plaintiff upon either of these questions, there is no further question for the jury to determine and the case is ended."

[¶ 13] In determining whether words are libelous and actionable, the relevant words must be construed in the context of the entire document, and the sense or meaning of the document must be determined by construing the words according to the natural and ordinary meaning a reasonable person of ordinary intelligence would give them. *Mr. G's Turtle Mountain Lodge*, 2002 ND 140, ¶ 37, 651 N.W.2d 625; *Moritz*, 315 N.W.2d at 461. A communication is not libelous if the language used is not fairly susceptible of a defamatory meaning. *Mr. G's Turtle Mountain Lodge*, at ¶¶ 36–39; *Moritz*, at 461.

[¶ 14] In *Mr. G's Turtle Mountain Lodge*, 2002 ND 140, ¶¶ 30–39, 651 N.W.2d 625, we concluded a letter to the editor was not capable of a defamatory meaning. The letter stated a building-plat map was recorded without the consent of a Township Board of Supervisors. The plaintiff conceded the language in the letter was "technically not false," but claimed the language raised an inference the plat was wrongly recorded and there was something wrong or illegal about the lots in the plat. *Id.* at ¶ 32. We concluded the truthful and innocuous language in the letter, read in the context of the entire letter, was not reasonably and fairly capable of the defamatory meaning suggested by the plaintiff. *Id.* at ¶¶ 37–39.

[¶ 15] In *Jose*, 1999 ND 175, ¶ 24, 599 N.W.2d 293, we rejected the plaintiffs' argument that statements in an employer's "Staff Changes" memorandum circulated to other employees created a claim for defamation. The statement said the plaintiffs were "no longer employees" and referred questions from the plaintiffs' clients to another employee. *Id.* We said the plaintiffs "were terminated, and any inferences from the innocuous memorandum which may have been drawn by third parties as a result of the termination does not make the termination defamatory." *Id.*

[¶ 16] In *Moritz*, 315 N.W.2d at 459–62, this Court concluded a clinic's letter to a patient was not capable of a defamatory meaning. The clinic's letter stated the clinic's physicians were withdrawing from further treatment of the patient and her immediate family for a "reason ... [that] should be obvious to you. The physicians are extremely uncomfortable treating you and do not find that they can do so in the physician-patient relationship that they would want to offer. Your past actions have made it difficult for them to accept you as a patient." *Id.* at 459. This Court concluded the entire letter according to the natural and ordinary meaning of the words could not be given a defamatory meaning. *Id.* at 461–62.

[¶ 17] Here, we conclude as a matter of law, MeritCare's responses, read in the context of the entire credentialing questionnaire, are not reasonably and fairly susceptible of a defamatory meaning. Dr. Schmitt conceded MeritCare's responses to the questionnaire were "technically true," and the responses represent truthful statements about Dr. Schmitt's work history at MeritCare. Defamation will not lie where only a forced construction will place a defamatory connotation on a communication, and the fact a plaintiff may place a defamatory connotation on a communication does not make the communication actionable. *See Mr. G's Turtle Mountain Lodge*, 2002 ND 140, ¶¶ 36–39, 651 N.W.2d 625; *Jose*, 1999 ND 175, ¶ 24, 599 N.W.2d 293; *Moritz*, 315 N.W.2d at 461–62. Considering the responses according to the natural and ordinary meaning of the words in the context of the

entire document, we agree with the district court that MeritCare's truthful responses cannot be construed as insinuation, innuendo, or sarcasm conveying a false and defamatory meaning under N.D.C.C. § 14–02–03.

[¶ 18] Dr. Schmitt also argues MeritCare's failure to timely respond to St. Joseph's credentialing questionnaire is an implied defamatory assertion.

[¶ 19] Under N.D.C.C. § 14–02–03, civil libel requires a false and unprivileged publication. We have said the communication of allegedly defamatory material to a third party is a publication, and a publication is required for libel or slander to be actionable. *Jose*, 1999 ND 175, ¶ 27, 599 N.W.2d 293. One court has recognized that silence in response to a reference request from a prospective employer does not constitute actionable defamation. *See Trail v. Boys and Girls Clubs*, 845 N.E.2d 130, 137–38 (Ind.2006). The court said, "It would be an odd use of the defamation doctrine to hold that silence constitutes actionable speech." *Id.* at 137.

[¶ 20] Here Dr. Schmitt's claim hinges on an alleged delay in responding to the questionnaire, and he has made only conclusory assertions that the alleged delay was interpreted as a false assertion of his medical competence. A party resisting a motion for summary judgment must present competent admissible evidence by affidavit or other comparable means raising an issue of material fact and cannot merely rely on unsupported and conclusory allegations. *Mr. G's Turtle Mountain Lodge*, 2002 ND 140, ¶ 22, 651 N.W.2d 625. We conclude as a matter of law MeritCare's alleged delay and claimed untimely responses to the credentialing questionnaire are not reasonably and fairly susceptible of a defamatory meaning.

[¶ 21] We therefore conclude Merit-Care's responses to the questionnaire are not fairly susceptible of a defamatory meaning, and the district court did not err in granting summary judgment on Dr. Schmitt's defamation claim against Merit-Care. Because of our resolution of this issue, we need not address MeritCare's arguments about the validity of Dr. Schmitt's authorization for MeritCare to respond to the questionnaire, or the application of either the immunity provisions of N.D.C.C. § 34–02–18(2) or the qualified privilege provisions of N.D.C.C. § 14–02–05(3) and *Soentgen*, 467 N.W.2d at 77–80, to Dr. Schmitt's defamation claim.

IV

[¶ 22] Dr. Schmitt argues the district court erred in granting summary judgment on his claim for tortious interference with a prospective business advantage. He contends the court erred in ruling there was no independent tortious or otherwise unlawful conduct to support this claim, because the court erred in deciding his defamation claim.

[¶ 23] In *Trade 'N Post*, 2001 ND 116, ¶¶ 35–36, 628 N.W.2d 707, we recognized the existence of a tort action for unlawful interference with business in North Dakota, and we said in order to prevail on the claim, a plaintiff must prove:

(1) the existence of a valid business relationship or expectancy; (2) knowledge by the interferer of the relationship or expectancy; (3) an independently tortious or otherwise unlawful act of interference by the interferer; (4) proof that the interference caused the harm sustained; and (5) actual damages to the party whose relationship or expectancy was disrupted.

We explained the phrase "otherwise unlawful act of interference" meant "otherwise in violation of state law." *Id.* at ¶ 43.

[¶ 24] To the extent Dr. Schmitt's argument on this issue relies on his defamation claim, we have held the district court did not err in dismissing that claim and his action for tortious interference with a prospective business advantage fails.

[¶ 25] Dr. Schmitt also argues the independent wrongful conduct may be supplied by the "force of numbers" or "economic boycott" exception to the tort of civil conspiracy.

▪ [¶ 26] In *Hurt v. Freeland*, 1999 ND 12, ¶ 37, 589 N.W.2d 551 (quoting *Burr v. Kulas*, 1997 ND 98, ¶ 18 n. 3, 564 N.W.2d 631), we said, "A civil conspiracy is 'a combination of two or more persons acting in concert to commit an unlawful act or to commit a lawful act by unlawful means, the principal element of which is an agreement between the parties to inflict a wrong against or injury upon another and an overt act that results in damage[s].'" Some courts have applied an "economic boycott" or "force of numbers" exception to the general rule that the basis for a civil conspiracy must be an independent wrong or tort which would constitute a cause of action if the wrong were done by one person. *See Kee v. National Reserve Life Ins. Co.*, 918 F.2d 1538, 1541–42 (11th Cir. 1990); *Furmanite America, Inc. v. T.D. Williamson, Inc.*, 506 F.Supp.2d 1134, 1147–48 (M.D.Fla.2007); *Margolin v. Morton F. Plant Hosp. Ass'n, Inc.*, 342 So.2d 1090, 1092–94 (Fla.Dist.Ct.App.1977); *Kurker v. Hill*, 44 Mass.App.Ct. 184, 689 N.E.2d 833, 836–37 (1998). Under that exception, the "'conduct complained of would not be actionable if done by one person, but by reason of force of numbers or other exceptional circumstances, the defendants possess some peculiar power of coercion, which gives rise to an independent tort of conspiracy, sometimes referred to as an "economic boycott."'" *Furmanite*, at 1147 (quoting *American Diversified Ins. Servs.,*

*Inc. v. Union Fidelity Life Ins. Co.*, 439 So.2d 904, 906 (Fla.Dist.Ct.App.1983)). The common thread for the exception nevertheless requires concerted action or an agreement. *Kee*, at 1542 (the result of the defendants' concerted action must be different from anything that could have been accomplished separately); *Furmanite*, at 1147 (requiring concerted action); *Margolin*, at 1094 (even though person may individually conduct business with anyone, when several persons who occupy a coercive position with respect to another act in concert to decline to do business with another, the refusal may constitute an independent tort); *Kurker*, at 836–37 (requiring concerted action).

[¶ 27] Assuming without deciding that we would adopt a "force of numbers" or "economic boycott" exception to the tort of civil conspiracy, we nevertheless conclude Dr. Schmitt provided no evidence to support an inference that Dakota Clinic and MeritCare acted in concert regarding the responses to the credentialing questionnaire. A party resisting a summary judgment motion cannot merely rely upon pleadings, briefs, or unsupported and conclusory allegations and must present competent admissible evidence by affidavit or other comparable means raising an issue of material fact. *Mr. G's Turtle Mountain Lodge*, 2002 ND 140, ¶ 22, 651 N.W.2d 625. Dr. Schmitt's conclusory allegations are insufficient to defeat a motion for summary judgment. We therefore conclude the district court did not err in granting summary judgment dismissal of Dr. Schmitt's claim for interference with a prospective business advantage.

V

▪ [¶ 28] Dr. Schmitt argues the district court erred in granting summary judgment on his state antitrust claim brought under N.D.C.C. ch. 51–08.1. Sec-

**636**

tion 51–08.1–02, N.D.C.C., provides that "[a] contract, combination, or conspiracy between two or more persons in restraint of, or to monopolize, trade or commerce in a relevant market is unlawful." Dr. Schmitt argues he provided sufficient evidence of a "combination" to create antitrust liability. He argues the actions of MeritCare and Dakota Clinic regarding decisions for medical staffing privileges constitute the use of monopoly powers to preclude him from obtaining medical staffing privileges. MeritCare responds Dr. Schmitt provided no evidence of a contract, combination, or conspiracy between it and Dakota Clinic.

[¶ 29] The district court decided Dr. Schmitt failed, as a matter of law, to provide any facts upon which a jury could conclude Dakota Clinic and MeritCare engaged in either a contract, combination, or conspiracy for antitrust purposes under N.D.C.C. § 51–08.1–02.

[¶ 30] Dr. Schmitt asserts that MeritCare's responses to the credentialing request raise inferences that MeritCare exercised monopoly powers over his medical privileges or prevented him from obtaining privileges in violation of N.D.C.C. ch. 51–08.1. We conclude Dr. Schmitt's conclusory assertions of a contract, combination, or conspiracy are insufficient to raise a material issue of fact. *See Mr. G's Turtle Mountain Lodge*, 2002 ND 140, ¶ 22, 651 N.W.2d 625. We conclude the district court did not err in granting summary judgment dismissal of Dr. Schmitt's claim under N.D.C.C. ch. 51–08.1.

## VI

[¶ 31] We affirm the summary judgment.

[¶ 32] GERALD W. VANDE WALLE, C.J., DANIEL J. CROTHERS, MARY MUEHLEN MARING, JJ., and EVERETT N. OLSON, S.J., concur.

[¶ 33] The Honorable EVERETT NELS OLSON, S.J., sitting in place of Kapsner, J., disqualified.