2015 ND 135

Joan D. JOHNSON, as personal representative of the Estate of Herman B. Johnson, deceased and Marguerite J. Johnson, by and through her attorney in fact, Joan D. Johnson, Plaintiffs and Appellants

v.

MID DAKOTA CLINIC, P.C., Defendant and Appellee.

No. 20140274.

Supreme Court of North Dakota.

May 27, 2015.

William P. Zuger, Tampa, FL, for plaintiffs and appellants.

Michael C. Waller, Bismarck, N.D., for defendant and appellee.

SANDSTROM, Justice.

[¶ 1] Joan Johnson, as personal representative of the Estate of Herman B. Johnson, deceased, and Marguerite Johnson, Herman Johnson's widow, appeal from a district court summary judgment dismissing their action against Mid Dakota Clinic. Because the Johnsons failed to present sufficient evidence to raise genuine issues of material fact precluding summary judgment, we affirm the judgment.

I

[¶ 2] On the morning of December 18, 2012, Herman Johnson experienced confusion and swelling of his legs and calves. That morning, Joan Johnson, Herman Johnson's daughter and attorney-in-fact, called the Veteran's Administration Clinic ("VA Clinic") to schedule an appointment for Herman Johnson, but the VA Clinic did not return her call. As a result, Joan Johnson called Mid Dakota to schedule an appointment. Although she had requested a specific doctor, she was advised she would not be able to see him that day and was given an appointment with Donald Grenz, M.D., later that afternoon.

[¶ 3] Upon arriving at Mid Dakota Clinic at Gateway Mall, Joan and Herman Johnson checked in with the receptionist approximately seven minutes late for Herman Johnson's appointment. Because they were more than five minutes late, they were told Dr. Grenz would not see them but they could reschedule with Dr. Grenz for another day or go to the emergency room or the "Today Clinic," a walk-in clinic within Mid Dakota's main clinic downtown. Joan and Herman Johnson subsequently left the clinic to seek alternative care. Upon entering the east vestibule of the Gateway Mall, Joan Johnson decided to seek the assistance of the VA Clinic, which was located in the mall immediately adjacent to Mid Dakota. As Joan and Herman Johnson turned to re-enter the mall, Herman Johnson fell and hit his head on the floor of the vestibule. As a result, he suffered a laceration along his forehead. Joan Johnson then returned to Mid Dakota and announced that Herman Johnson had fallen and was injured. A registered nurse employed by Mid Dakota assisted Herman Johnson until he was taken by ambulance to St. Alexius Medical Center and was admitted for observation. While Herman Johnson was hospitalized, he suffered two episodes of respiratory arrest, and he died on December 27, 2012.

[¶ 4] Joan Johnson, as personal representative of Herman Johnson's Estate and attorney in fact of Marguerite Johnson, sued Mid Dakota, alleging breach of contract, negligence, and professional negligence. The Johnsons specifically argued: (1) Mid Dakota breached its contract with Herman Johnson; (2) Mid Dakota's acts and omissions were negligent and proximately caused the damages suffered by Herman Johnson; and (3) Mid Dakota committed professional negligence by failing to meet the generally accepted standards for medical care and treatment.

[¶ 5] Mid Dakota responded to the Johnsons' amended complaint by moving for summary judgment. Mid Dakota argued, scheduling an appointment with a physician does not establish a legal duty to treat the patient, does not establish a physician-patient relationship necessary to maintain a medical malpractice claim, and does not constitute a contract. Mid Dakota argued that because there was no dispute as to the material facts, it was entitled to judgment as a matter of law.

[¶ 6] Following responsive and supplementary briefing by the parties, the district court granted summary judgment in favor of Mid Dakota. The court specifically held the mere act of scheduling an appointment did not create a physician-patient relationship or a binding contract between Mid Dakota and Herman Johnson. Moreover, the district court held Herman Johnson's injury and subsequent death were not proximately caused by Mid Dakota's cancellation of his appointment.

[¶ 7] The trial court had jurisdiction under N.D. Const. art. VI, § 8, and N.D.C.C. § 27–05–06. The appeal is timely under N.D.R.App.P. 4(a). This Court has jurisdiction under N.D. Const. art. VI, §§ 2 and 6, and N.D.C.C. § 28–27–01.

## II

[¶ 8] On appeal, the Johnsons argue the district court erred in granting summary judgment in favor of Mid Dakota, because there are genuine issues of material fact regarding the following issues: (1) whether Herman Johnson was a patient of Mid Dakota; (2) whether Mid Dakota's negligent maintenance of its parking lot and its refusal to treat Herman Johnson were the legal causes of his injury; and (3) whether the elements of a contract were established.

[¶ 9] Rule 56(c), N.D.R.Civ.P., states, in part: "The judgment sought shall be rendered if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Summary judgment is a "procedural device under N.D.R.Civ.P. 56 for prompt and expeditious disposition of a controversy without a trial if either party is entitled to judgment as a matter of law, and if no dispute exists as to either the material facts or the inferences to be drawn from undisputed facts, or if resolving disputed facts would not alter the result." *Green v. Mid Dakota Clinic*, 2004 ND 12, ¶ 5, 673 N.W.2d 257. "The party moving for summary judgment must show that there are no genuine issues of material fact and that the case is appropriate for judgment as a matter of law." *Beckler v. Bismarck Pub. Sch. Dist.*, 2006 ND 58, ¶ 7, 711 N.W.2d 172 (citing *Green*, at ¶ 5). " 'On appeal, the evidence must be viewed in the light most favorable to the opposing party, and that party must be given the benefit of all favorable inferences.' " *Beckler*, at ¶ 7 (quoting *Hurt v. Freeland*, 1999 ND 12, ¶ 7, 589 N.W.2d 551). The party resisting summary judgment cannot, however, "merely rely on the pleadings, briefs, or unsupported and conclusory allegations." *Schmitt v. MeritCare Health System*, 2013 ND 136, ¶ 8, 834 N.W.2d 627. The nonmoving party must present " 'competent admissible evidence by affidavit or other comparable means which raises an issue of material fact and must, if appropriate, draw the court's attention to relevant evidence in the record by setting out the page and line in depositions or other comparable documents containing testimony or evidence raising an issue of material fact.' " *Id.* (quoting *Mr. G's Turtle Mountain Lodge, Inc. v. Roland Twp.*, 2002 ND 140, ¶ 22, 651 N.W.2d 625). "The nonmoving

party cannot rely on speculation and must present 'enough evidence for a reasonable jury to find for the plaintiff.'" *Beckler*, at ¶ 7 (quoting *Iglehart v. Iglehart*, 2003 ND 154, ¶ 10, 670 N.W.2d 343). This Court reviews a district court's grant of summary judgment de novo. *Dalan v. Paracelsus Healthcare Corp.*, 2002 ND 46, ¶ 7, 640 N.W.2d 726.

## III

[¶ 10] The Johnsons argue the district court erred in granting summary judgment to Mid Dakota on the Johnsons' professional and ordinary negligence claims. The Johnsons contend that because Mid Dakota failed to adequately maintain its parking lot, Herman Johnson was late to his appointment, was not seen by Dr. Grenz on account of his tardiness, and, after having been wrongfully turned away, suffered an injury that led to his death. In sum, the Johnsons argue Dr. Grenz's policy of not seeing patients who arrive more than five minutes late for appointments was a negligent breach of the duty Mid Dakota owed to Herman Johnson and Herman Johnson's fall was a foreseeable event proximately caused by Mid Dakota's refusal to treat Herman Johnson's medical condition.

[¶ 11] To establish a prima facie case of professional negligence, a plaintiff must produce "'expert evidence establishing the applicable standard of care, violation of that standard, and a causal relationship between the violation and the harm complained of.'" *Scheer v. Altru Health Sys.*, 2007 ND 104, ¶ 18, 734 N.W.2d 778 (quoting *Van Klootwyk v. Baptist Home*, 2003 ND 112, ¶ 20, 665 N.W.2d 679). Under N.D.C.C. § 28-01-46, however, expert testimony is not required to establish a duty if the breach is "so egregious that a layman is capable of comprehending its enormity." *Johnson v.*

*Bronson*, 2013 ND 78, ¶ 12, 830 N.W.2d 595 (quotation marks and citations omitted). This "obvious occurrence" exception applies "only to cases that are plainly within the knowledge of a layperson." *Johnson*, at ¶ 12. When the "obvious occurrence" exception applies, "'expert testimony is unnecessary precisely because a layperson can find negligence without the benefit of an expert opinion.'" *Id.* (quoting *Larsen v. Zarrett*, 498 N.W.2d 191, 195 (N.D.1993)). The Johnsons do not argue the "obvious occurrence" exception applies to their professional negligence claim.

[¶ 12] In this case, the Johnsons argued Mid Dakota committed both professional and ordinary negligence because it breached the applicable standard of care by refusing treatment to Herman Johnson for being late and, as a result, proximately caused his eventual injury and death. In support of their argument, the Johnsons offered the deposition testimony of their medical expert, Michael Loes, M.D. Dr. Loes testified it was his opinion that Mid Dakota breached its duty to Herman Johnson because a reasonable clinic would not have refused to see a patient who was only seven minutes late; instead, he claimed a reasonable clinic would have performed a "common-sense assessment" to determine whether Herman Johnson's condition warranted immediate treatment or hospitalization.

[¶ 13] In addition, Dr. Loes also testified that had Herman Johnson been seen by Dr. Grenz, he would not have fallen and suffered his injury, because he would have been evaluated to determine whether hospitalization was necessary. Although he was not able to personally assess or evaluate Herman Johnson's medical condition at the time he was denied treatment, Dr. Loes testified it was "more probable than not" that Herman Johnson would have been hospitalized had he been seen by Dr.

Grenz. Although Dr. Loes testified a different series of events would have occurred if Herman Johnson had been seen by Dr. Grenz, Dr. Loes said Herman Johnson's fall was not caused by his medical condition but by Joan Johnson's failure to provide sufficient attention to prevent Herman Johnson's fall:

> Mr. Waller: So going back to the fall, and I just want to make sure I—it's your opinion that Mr. Johnson required some assistance in ambulation, and because Joan was trying to reschedule him for the VA clinic, she didn't provide that attentiveness, and that's why he fell?
>
> Dr. Loes: The details are sketchy, but that is my understanding.

[¶ 14] The district court granted summary judgment in favor of Mid Dakota, concluding the Johnsons failed to prove their claims of ordinary negligence, professional negligence, and breach of contract. Although the district court did not address each of the Johnsons' claims separately, the court held they had failed to prove Mid Dakota had a duty to ensure that Herman Johnson was treated by Dr. Grenz on December 18, 2012, or Mid Dakota's actions or inactions caused Herman Johnson's injuries, which led to his death. In regard to causation, the district court stated:

> Finally, Mr. Johnson's injury and subsequent passing were not proximately caused by the Clinic cancelling Mr. Johnson's appointment. Proximate cause is that cause which, as a natural and continuous sequence, unbroken by any controlling intervening cause, produces the injury, and without which it would not have occurred. The plaintiffs argue that the Clinic, knowing of Mr. Johnson's condition, should have foreseen that he may, upon leaving the clinic, fall and sustain an injury. This argument imposes an unreasonable level of prescience on the defendant. Mr. Johnson's unfortunate trip and fall and subsequent passing were not causally connected to the Clinic's refusal to see him.

[¶ 15] In general, summary judgment is inappropriate for negligence claims because such claims involve questions of fact; however, summary judgment will be deemed appropriate when "the evidence is such that a reasonable factfinder can reach only one conclusion." *Klimple v. Bahl*, 2007 ND 13, ¶ 5, 727 N.W.2d 256 (citing *Beckler v. Bismarck Pub. Sch. Dist.*, 2006 ND 58, ¶ 9, 711 N.W.2d 172). Despite the Johnsons' argument that the facts of this case preclude summary judgment because there were questions of fact as to whether Mid Dakota owed a duty to Herman Johnson and whether Mid Dakota's actions or inactions caused Herman Johnson's injuries, a review of the record reflects that the Johnsons failed to prove the essential elements of a prima facie case for professional negligence and ordinary negligence.

[¶ 16] Although professional negligence and ordinary negligence are separate claims requiring different elements, a plaintiff cannot maintain either claim without presenting a prima facie case that establishes a duty was owed to the plaintiff, the duty was breached, and the breach caused the plaintiff's injury. *See Beckler*, 2006 ND 58, ¶ 8, 711 N.W.2d 172 (negligence claims require plaintiff to prove the defendant owed a duty to the plaintiff, the defendant breached that duty, and the plaintiff suffered an injury proximately caused by the defendant's negligence); *Scheer*, 2007 ND 104, ¶ 18, 734 N.W.2d 778 (professional negligence claims require "expert evidence establishing the applicable standard of care, violation of that standard, and a causal relationship between the violation and the harm complained of"). If a plaintiff fails "to establish the existence of a factual dispute on an

essential element of a claim on which they will bear the burden of proof at trial," summary judgment will be deemed appropriate. *Klimple v. Bahl,* 2007 ND 13, ¶ 5, 727 N.W.2d 256.

[¶ 17] In the present case, the record reflects the Johnsons have failed to prove the essential elements of their professional and ordinary negligence claims, because they failed to prove Mid Dakota's actions or inactions proximately caused Herman Johnson's injuries and death. The record reflects there was no medical testimony presented that established Herman Johnson's untreated medical condition proximately caused his fall and subsequent death. A proximate cause is " 'a cause which, as a natural and continuous sequence, unbroken by any controlling intervening cause, produces the injury, and without which it would not have occurred.' " *Beckler,* 2006 ND 58, ¶ 13, 711 N.W.2d 172 (quoting *Kimball v. Landeis,* 2002 ND 162, ¶ 7, 652 N.W.2d 330); *see Frank v. Mercer Cnty.,* 186 N.W.2d 439, 446 (N.D.1971) (to be the proximate cause of the damage complained of, the "damage must be direct and proximate and not merely such as is possible, as may be conceived by the imagination. . . ."). Although the Johnsons' assertion—but for the clinic's refusal to treat Herman Johnson he would not have fallen in the vestibule while trying to re-enter the mall—could be characterized as partially correct in that a different sequence of events might have occurred had he been treated, that does not make Mid Dakota liable for the remote result of its decision to deny treatment to him. The term "proximate cause" strictly contemplates "an immediate cause which in natural and probable sequence produces the injury complained of" and expressly excludes any assignment of legal liability "based on speculative possibilities, or circumstances and conditions

remotely connected with the events leading up to the injury." *Moum v. Maercklein,* 201 N.W.2d 399, 403–04 (N.D.1972) (although an employee would not have attempted to drive during inclement weather but for the railroad's request that he report to work, the court held the railroad did not proximately cause the accident that occurred when the employee attempted to pass an automobile while driving to work but failed to give the right of way to oncoming traffic, because the collision was not a "natural and probable" result of a request to report to work).

[¶ 18] In the present case, the Johnsons failed to produce any medical testimony that proved Herman Johnson's untreated medical condition proximately caused his fall and subsequent death; instead, the testimony provided by the Johnsons' own medical expert, Dr. Loes, indicated that Herman Johnson's fall was likely caused by Joan Johnson's lack of attentiveness while walking him back into the mall, not by Mid Dakota's actions or inactions. Without competent, admissible evidence that Herman Johnson's fall and eventual death by respiratory failure was the natural and probable result of Mid Dakota's refusal to treat him because he was late for his appointment, there is no evidence that Mid Dakota's actions or inactions proximately caused the harm complained of. *See Aasmundstad v. State of North Dakota,* 2008 ND 206, ¶ 17, 763 N.W.2d 748 ("Proximate cause cannot be established without reliable evidence establishing a causal connection."). Therefore, because the record reflects the Johnsons have failed to establish that Mid Dakota's actions or inactions caused Herman Johnson's injury and death, we conclude the district court did not err in granting summary judgment in favor of Mid Dakota. *See Johnson v. Bronson,* 2013 ND 78, ¶ 20, 830 N.W.2d 595; *contra Jaskoviak,* 2002 ND 1, ¶ 23, 638 N.W.2d 1 (summary judg-

ment is inappropriate if medical evidence establishes the applicable standard of care, the defendant's failure to meet the required standard, injury, and causation).

## IV

[¶ 19] We do not address other issues raised on appeal, because they are either unnecessary to the decision or are without merit. *Johnson v. Mark*, 2013 ND 128, ¶ 34, 834 N.W.2d 291. The judgment is affirmed.

[¶ 20] GERALD W. VANDE WALLE, C.J., DANIEL J. CROTHERS, LISA FAIR McEVERS and CAROL RONNING KAPSNER, JJ., concur.