2017 ND 146

**Roxane CARTWRIGHT and Tim Cartwright, Plaintiffs and Appellants**

v.

**Beverly TONG, M.D., and Great Plains Women's Health Center, P.C., Defendants and Appellees**

No. 20160293

Supreme Court of North Dakota.

Filed 6/14/2017

Nathan D. Severson, Fargo ND, for plaintiffs and appellants.

Brenda L. Blazer (argued) and Vanessa L. Lystad (on brief), Bismarck, ND, for defendants and appellees.

Crothers, Justice.

[¶ 1] Roxane and Tim Cartwright appeal from a district court order and judgment dismissing their complaint without prejudice. The Cartwrights argue the district court erred in dismissing their complaint because the "obvious occurrence" and "wrong organ" exceptions to N.D.C.C. § 28-01-46 apply to their claim. We affirm the district court's order and judgment.

## I

[¶ 2] On May 8, 2014 the Cartwrights sued Dr. Beverly Tong and Great Plains Women's Health Center alleging professional negligence stemming from a medical procedure performed following a caesarean section. The Cartwrights alleged in their complaint:

"IV.

On May 7, 2012, Plaintiff, Roxane Cartwright, authorized and consented to a 'Caesarean delivery with tubal ligation.'

V.

On May 16, 2012, Plaintiff, Roxane Cartwright, under the care of Defendant Tong, underwent a Caesarean section. Thereafter, Defendant Tong performed a salpingectomy, removing Roxane Cartwright's fallopian tubes, rather than performing a tubal ligation, as Roxane Cartwright had consented to.

VI.

The salpingectomy performed by Dr. Tong was done without Plaintiffs' informed consent.

VII.

As a proximate result of the negligence of Defendant Tong, Plaintiff now is permanently sterilized and no longer able to bear children, nor does she have the ability to reverse the procedure in order to bear children, as she would have had, if a tubal ligation had been performed."

[¶ 3] According to the Cartwrights, Roxane Cartwright consented to have Tong perform a "Caesarean section with tubal ligation," in which her fallopian tubes would be tied to prevent future pregnancies. Roxane Cartwright alleges Tong mentioned a procedure called a "bilateral salpingectomy," which would remove Roxane Cartwright's fallopian tubes. According to Roxane Cartwright she told Tong she did not want her fallopian tubes removed and did not consent to the bilateral salpingectomy. Following the caesarean section Tong performed a bilateral salpingectomy, removing the fallopian tubes. Roxane Cartwright first discovered Tong removed her fallopian tubes at a February 24, 2014 appointment to discuss the reversal of the tubal ligation because it was taking longer than expected for the couple to adopt a child. Tong told Roxane Cartwright she could not get pregnant because she removed her fallopian tubes following the caesarean section.

[¶ 4] On April 27, 2016 Tong and Great Plains filed a motion to dismiss, arguing the Cartwrights failed to disclose an expert witness within three months of commencing their lawsuit as required under N.D.C.C. § 28-01-46. Alternatively, Tong

and Great Plains moved for summary judgment. After a hearing the district court entered a judgment on June 27, 2016, dismissing the Cartwrights' complaint without prejudice because they failed to file an affidavit containing an admissible expert opinion supporting a prima facie case of medical malpractice within the statutory timeline. The Cartwrights appeal.

## II

[¶ 5] A dismissal without prejudice generally is not appealable. *Scheer v. Altru Health System*, 2007 ND 104, ¶ 9, 734 N.W.2d 778. "However, a dismissal without prejudice may be final and appealable if the plaintiff cannot cure the defect that led to dismissal, or if the dismissal has the practical effect of terminating the litigation in the plaintiff's chosen forum." *Id.* (quoting *Rodenburg v. Fargo–Moorhead YMCA*, 2001 ND 139, ¶ 12, 632 N.W.2d 407).

[¶ 6] The three-month requirement to provide an admissible expert opinion affidavit "operates within the confines of a two-year statute of limitations for medical malpractice claims." *Scheer v. Altru Health System*, 2007 ND 104, ¶ 11, 734 N.W.2d 778. "[T]he two-year statute of limitations begins to run when the plaintiff knows, or with reasonable diligence should know, of (1) the injury, (2) its cause, and (3) the defendant's possible negligence." *Id.* (quoting *Schanilec v. Grand Forks Clinic, Ltd.*, 1999 ND 165, ¶ 12, 599 N.W.2d 253).

[¶ 7] According to Roxane Cartwright, she discovered at an appointment on February 24, 2014 that her fallopian tubes were removed. The district court's dismissal of the Cartwrights' complaint on June 27, 2016 occurred after the two-year statute of limitations had run, effectively foreclosing future litigation. The district court's judgment dismissing the Cartwrights' complaint without prejudice is appealable.

## III

[¶ 8] The parties disagree on the standard of review applicable in this case. Because we conclude below the requirements of the statute were not met, it is not necessary to decide the appropriate standard of review under N.D.C.C. § 28–01–46. *See Greene v. Matthys*, 2017 ND 107, ¶ 8, 893 N.W.2d 179; *Haugenoe v. Bambrick*, 2003 ND 92, ¶ 9, 663 N.W.2d 175; *Larson v. Hetland*, 1999 ND 98, ¶ 13 n. 2, 593 N.W.2d 785; *Larsen v. Zarrett*, 498 N.W.2d 191, 195 n. 2 (N.D. 1993).

## IV

[¶ 9] The Cartwrights argue the district court erred in dismissing their complaint because it did not apply the "obvious occurrence" and "wrong organ" exceptions in N.D.C.C. § 28–01–46. The Cartwrights claim Tong negligently expanded the scope of Roxane Cartwright's original consent. The Cartwrights contend Roxane Cartwright consented to a bilateral tubal ligation and did not consent to a bilateral salpingectomy, which Tong performed, removing her fallopian tubes. Tong and Great Plains rely on the language in the complaint to characterize the Cartwrights' claim as a lack of informed consent.[1]

---

1. In the complaint, the Cartwrights alleged the salpingectomy was performed without Roxane Cartwright's "informed consent." Arguably, the claims against Tong should have been analyzed as a "medical battery." *See Hopfauf v. Hieb*, 2006 ND 72, ¶ 11 n. 2, 712 N.W.2d 333 (noting the distinction between a battery which involves a total lack of consent for an act, and a lack of informed consent claim). Because the Cartwrights assert Tong's actions constitute negligence, we review this case as presented. *Id.* ("The 'law of the case'

[¶ 10] Under N.D.C.C. § 28–01–46, a court must dismiss a medical malpractice claim "unless the plaintiff serves upon the defendant an affidavit containing an admissible expert opinion to support a prima facie case of professional negligence within three months of the commencement of the action." "The statute attempts to minimize frivolous claims by requiring the plaintiff to produce an expert opinion to support the allegations of negligence in the early stages of litigation." *Haugenoe v. Bambrick*, 2003 ND 92, ¶ 10, 663 N.W.2d 175. Under N.D.C.C. § 28–01–46, an expert witness affidavit is not required to establish a duty if the breach is "so egregious that a layman is capable of comprehending its enormity." *Johnson v. Mid Dakota Clinic, P.C.*, 2015 ND 135, ¶ 11, 864 N.W.2d 269 (quoting *Johnson v. Bronson*, 2013 ND 78, ¶ 12, 830 N.W.2d 595). Thus, the statute provides that the expert opinion affidavit requirement does not apply to "unintentional failure to remove a foreign substance from within the body of a patient, or performance of a medical procedure upon the wrong patient, organ, limb, or other part of the patient's body, or other obvious occurrence." N.D.C.C. § 28–01–46.

[¶ 11] The Cartwrights did not serve an affidavit containing an admissible expert opinion to support a prima facie case of professional negligence within three months of commencing the action. The Cartwrights contend two statutory exceptions apply to their case, the "obvious occurrence" exception and the "wrong organ" exception; thus, they did not need to produce an expert opinion affidavit. The district court dismissed the Cartwrights' complaint, finding they did not serve an expert affidavit as required under N.D.C.C. § 28–01–46. The district court did not address the applicability of the "obvious occurrence" or "wrong organ" exceptions.

## A

[¶ 12] The Cartwrights argue the "obvious occurrence" exception applies to their case and they were not required to produce an expert opinion affidavit within three months of commencing the action. In a medical malpractice action, "a plaintiff must produce expert evidence establishing the applicable standard of care, violation of that standard, and a causal relationship between the violation and the harm complained of." *Johnson v. Mid Dakota Clinic, P.C.*, 2015 ND 135, ¶ 11, 864 N.W.2d 269 (internal citation and quotations omitted). "The 'obvious occurrence' exception applies only to cases that are plainly within the knowledge of a layperson. In an 'obvious occurrence' case, expert testimony is unnecessary precisely because a layperson can find negligence without the benefit of an expert opinion." *Larsen v. Zarrett*, 498 N.W.2d 191, 195 (N.D. 1993). Generally, technical surgical procedures are recognized as beyond the understanding of a layperson. *Id.* "In order for this exception to apply, the occurrence that led to the result, not the result itself, must be obvious." *Greene v. Matthys*, 2017 ND 107, ¶ 14, 893 N.W.2d 179.

[¶ 13] Tong and Great Plains argue this case involves technical surgical procedures beyond the common knowledge of laypersons. Tong and Great Plains assert expert testimony is required to establish the likely permanence of each procedure, the possibility of reversal and the likelihood of success of an attempted reversal. The Cartwrights contend Tong allegedly expanding the scope of consent in removing the fallopian tubes is not technical, and the

doctrine and the scope of the parties' appeal define the parameters of our review.") (citing

*Tom Beuchler Constr. v. Williston*, 413 N.W.2d 336, 339 (N.D. 1987)).

removal of the fallopian tubes beyond the scope of the original consent is the obvious occurrence. The Cartwrights argue Tong's removal of Roxane Cartwright's fallopian tubes, to which she allegedly did not consent, constitutes obvious negligence.

[¶ 14] The Cartwrights' claim is not the type of claim that falls within the "obvious occurrence" exception. Analyzing the claim under the Cartwrights' theory that Tong expanded the original scope of Roxane Cartwright's consent, an expert witness is required to establish Tong's applicable standard of care, violation of that standard and the causal relationship between the violation and the harm complained of. Roxane Cartwright and Tong discussed the bilateral tubal ligation procedure and the bilateral salpingectomy procedure. According to the Cartwrights, Roxane Cartwright consented to the bilateral tubal ligation procedure and did not consent to the bilateral salpingectomy procedure, which Tong performed. While it may be obvious Tong performed a different surgery than was allegedly consented to, the occurrence leading to the result is not obvious. *Greene v. Matthys*, 2017 ND 107, ¶ 14, 893 N.W.2d 179. This was a technical procedure requiring an expert witness to establish the applicable standard of care, violation of that standard and a causal relationship between the violation and the harm complained of. The record is silent regarding why Tong performed the salpingectomy and disputed evidence exists as to whether Roxane Cartwright consented to the salpingectomy immediately before surgery. It is not obvious that a doctor cannot tie or remove the fallopian tubes without inferences of the decision being that of a professional judgment. At a minimum, expert testimony is required to establish the standard of care. Moreover, bilateral tubal ligation and bilateral salpingectomy procedures and the medical risks associated with each procedure are beyond the common understanding of a layperson. *See Larsen v. Zarrett*, 498 N.W.2d 191, 195 (N.D. 1993).

[¶ 15] Analyzing the Cartwrights' claim as a lack of informed consent claim, as characterized by Tong and Great Plains, the "obvious occurrence" exception does not apply to the Cartwrights' case. "[T]he doctrine of informed consent is a form of negligence which essentially relates to a duty of a doctor to disclose pertinent information to a patient." *Jaskoviak v. Gruver*, 2002 ND 1, ¶ 13, 638 N.W.2d 1 (quoting *Fortier v. Traynor*, 330 N.W.2d 513, 517 (N.D. 1983)). "A plaintiff in an informed-consent case must establish breach of a physician's duty of disclosure, causation, and injury." *Id.* "An integral part of a physician's duty to a patient is the disclosure of available choices for treatment and the material and known risks involved with each treatment." *Long v. Jaszczak*, 2004 ND 194, ¶ 12, 688 N.W.2d 173 (quoting *Flatt v. Kantak*, 2004 ND 173, ¶ 6, 687 N.W.2d 208). Prior to 2005 the expert witness affidavit requirement of N.D.C.C. § 28–01–46 did not apply to lack of informed consent claims. 2005 N.D. Session Laws, ch. 280, § 1 (removing "alleged lack of informed consent" from N.D.C.C. § 28–01–46).

[¶ 16] The Legislature's removal of lack of informed consent claims as an exception in 2005 and our case law, supports the need for expert testimony in the present case. In the context of a lack of informed consent case, we explained:

"Expert medical testimony is generally necessary to identify the risks of treatment, their gravity, likelihood of occurrence, and reasonable alternatives. The necessity for expert testimony is particularly so when such information is outside the common knowledge of laymen. Expert testimony may be necessary under the lay standard, at least to estab-

lish the existence of a risk, its likelihood of occurrence, and the type of harm in question; after that, however, expert evidence may not be required. However, experts may be required to show both that material information existed and that the defendant should reasonably have known about it."

*Jaskoviak v. Gruver*, 2002 ND 1, ¶ 19, 638 N.W.2d 1 (internal citations and quotations omitted).

[¶ 17] Here, expert testimony is necessary because the procedures at issue are outside the common knowledge of a layperson. The record does not establish the medical risks, gravity and type of harm associated with each procedure. Under either theory presented by the parties, the "obvious occurrence" exception does not apply to the Cartwrights' case. Thus, the Cartwrights were required to provide an affidavit from an expert witness within three months of commencing the action.

## B

[¶ 18] The Cartwrights also argue the "wrong organ" exception applies to their case, relieving them of the requirement to provide an affidavit of an expert witness under N.D.C.C. § 28–01–46. Section 28–01–46, N.D.C.C., does not apply to the "performance of a medical procedure upon the wrong patient, organ, limb, or other part of the patient's body[.]"

[¶ 19] The Cartwrights contend the "wrong organ" exception applies because Tong removed an organ that Roxane Cartwright did not consent to have removed. The Cartwrights argue Roxane Cartwright consented to have her fallopian tubes tied, specifically told Tong she did not want her fallopian tubes removed and, because Tong removed her fallopian tubes, Tong performed a medical procedure on the wrong organ.

[¶ 20] Tong and Great Plains argue the "wrong organ" exception does not apply because the procedure allegedly consented to and the procedure performed occurred on the same organ—the fallopian tubes. We agree.

[¶ 21] The phrase "wrong organ" is not defined in N.D.C.C. § 28–01–46. When the Legislature does not define a phrase, we must give words in a statute their plain, ordinary and commonly understood meaning. N.D.C.C. § 1–02–02; *Greene v. Matthys*, 2017 ND 107, ¶ 10, 893 N.W.2d 179 (quoting *Rasnic v. ConocoPhillips Co.*, 2014 ND 181, ¶ 14, 854 N.W.2d 659). "Words and phrases must be construed according to the context and the rules of grammar and the approved usage of the language." N.D.C.C. § 1–02–03. The plain, ordinary and commonly understood meaning of "wrong" is "the state of being mistaken or incorrect." *Merriam–Webster's Collegiate Dictionary* 1447 (11th ed. 2005). The plain, ordinary and commonly understood meaning of "organ" is "bodily parts performing a function or cooperating in an activity." *Merriam–Webster's Collegiate Dictionary* 874 (11th ed. 2005). Thus, in the context of N.D.C.C. § 28–01–46, the plain, ordinary and commonly understood meaning of the phrase "wrong organ" would require a doctor to perform a medical procedure on an incorrect or mistaken organ.

[¶ 22] Construing N.D.C.C. § 28–01–46 in its plain and ordinary sense, the "wrong organ" exception does not apply to the facts of this case. The surgeries here require a procedure on the fallopian tubes. Tong performed a procedure on the correct organ—the fallopian tubes. Tong performing a procedure, that was allegedly not consented to, on the correct organ does not constitute a procedure on the wrong organ. Therefore the "wrong organ" exception does not apply.

## V

[¶ 23] Because the exceptions to N.D.C.C. § 28–01–46 do not apply, the requirements of the statute were not met as a matter of law. We affirm the district court's order and judgment dismissing the Cartwrights' complaint.

[¶ 24] Daniel J. Crothers

Lisa Fair McEvers

Jerod E. Tufte

[¶ 25] The Honorable William Herauf, D.J., sitting in place of Kapsner, J., disqualified.

McEvers, Justice, concurring specially.

[¶ 26] I agree with and have signed with the majority. I write separately to point out that it would have been helpful for the district court to address the issue of obvious occurrence. A one paragraph order granting a motion to dismiss and stating an alternative motion for summary judgment is moot, with no further analysis, should probably be reversed as a matter of law. This Court has no way of knowing if the district court even considered the issue of obvious occurrence. However, in this case, because we are able to discern from the record that the obvious occurrence exception does not apply, remand is not necessary.

[¶ 27] Determining whether performing a salpingectomy instead of a tubal ligation is an "obvious occurrence" under N.D.C.C. § 28–01–46, is not as simple as the dissent seems to suggest. While I agree with the dissent that performing a different surgery than was identified on the consent form seems obvious, the facts here show otherwise.

[¶ 28] "The 'obvious occurrence' exception applies only to cases that are plainly within the knowledge of a layperson. In an 'obvious occurrence' case, expert testimony is unnecessary precisely because a layperson can find negligence without the benefit of an expert opinion." *Larsen v. Zarrett*, 498 N.W.2d 191, 195 (N.D. 1993). In Tong's Answer to the Cartwrights' Complaint, Tong admitted that Cartwright authorized and consented to a cesarean section delivery with tubal ligation. Tong also admits in her Answer she "performed a bilateral salpingectomy, also known as a tubal ligation." In support of her Answer, Tong submitted medical records pertaining to Cartwright's surgery that include references to completing both procedures. The description of the surgery on Cartwright's fallopian tube states, in part: "There was a small area of venous bleeding on the mesosalpinx on the left after completion of the tubal ligation. . . . The mesosalpinges were carefully inspected for a period after completion of the salpingectomy and were hemostatic." The terms "tubal ligation" and "salpingectomy" are medical terms for procedures that are not within the knowledge of a layperson. Whether the terms tubal ligation and salpingectomy are used interchangeably to describe tubal sterilization is also beyond the knowledge of a layperson.

[¶ 29] Lisa Fair McEvers

Herauf, District Judge, dissenting.

[¶ 30] I respectfully dissent. I believe that the obvious occurrence exception to N.D.C.C. § 28–01–46 applies to this case.

[¶ 31] The majority concludes that the obvious occurrence exception does not apply to this case reasoning: "While it may be obvious Tong performed a different surgery than was allegedly consented to, the occurrence leading to the result is not obvious." Majority, at ¶ 14. The majority further concludes that expert testimony is required to establish the standard of care because, "[i]t is not obvious that a doctor

cannot tie or remove fallopian tubes without inferences of the decision being that of a professional judgment." *Id.*

[¶ 32] In *Greene v. Matthys*, this Court considered an incident where a plaintiff had hip surgery and the surgery resulted in her left leg being two inches longer than her right leg. 2017 ND 107, ¶ 14, 893 N.W.2d 179. The plaintiff argued the two-inch leg-length discrepancy qualified as an obvious occurrence under N.D.C.C. § 28–01–46. *Id.* This Court concluded that the obvious occurrence exception did not apply, reasoning: "Greene's argument focuses on an obvious result after a technical surgical procedure. In order for this exception to apply, the occurrence that led to the result, not the result itself, must be obvious." *Id.*

[¶ 33] In this case, unlike in *Greene*, I believe it is obvious that the wrong procedure was performed, not just that the result was obviously wrong. The Cartwrights allege that Roxane consented to having her fallopian tubes severed and discussed the procedure at length with Tong and in close proximity to the time Tong performed the procedure. The Cartwrights further allege that instead of severing Roxane's fallopian tubes, Tong removed them. There are no allegations that Tong was medically required to perform the procedure or that she ever informed the Cartwrights that she had performed a different procedure from the one to which Roxane Cartwright consented. I disagree with the majority that, in order to satisfy the obvious occurrence exception, the Cartwrights must show there are no possible inferences that the reason why the doctor performed the wrong procedure on Roxane Cartwright was the result of professional judgment. In requiring the Cartwrights to establish the standard of care to prove this incident qualifies as an obvious occurrence, I believe the majority is disregarding the

plain meaning of the statute. A jury is fully capable of understanding that Roxane Cartwright only consented to having the fallopian tubes severed and that Tong, with full and unmistakable knowledge that Roxane did not want the fallopian tubes removed, went against Roxane's explicit directions and removed the tubes anyway. The focus is on the obvious occurrence, which is the wrongful, unconsented to surgical procedure.

[¶ 34] Under N.D.C.C. § 28–01–46, an individual bringing a professional negligence claim against a physician must serve the defendant with an affidavit containing an admissible expert opinion to support a prima facie case of professional negligence within three months of the commencement of the action. However, if the negligence claim involves the failure to remove a foreign substance from within the body of the patient, performance of a medical procedure upon the wrong patient, organ, limb, or other part of the patient's body, or another obvious occurrence, then the individual need not serve an expert opinion supporting a prima facie case of professional negligence. *Id.*

[¶ 35] Here, the majority is requiring the Cartwrights to present an expert opinion establishing the elements of a prima facie case of negligence to satisfy the obvious occurrence exception, which I believe is contrary to the statute. In order to show that the obvious occurrence exception applies under N.D.C.C. § 28–01–46, I do not believe that the Cartwrights need to present evidence to show the likely permanence of, or the possibility of reversal of the procedure removing the fallopian tubes compared with the procedure severing the fallopian tubes. The allegation supporting the Cartwrights' complaint is that Roxane Cartwright consented to Tong severing her fallopian tubes, but, instead, Tong completely removed them. It is obvious

that Tong removed an organ that she only had consent to sever. I do not believe that N.D.C.C. § 28–01–46 requires this Court to analyze how the effects of the procedure would have been different had Tong performed the procedure to which Roxane Cartwright consented. I believe the majority is requiring Roxane Cartwright to prove exactly what N.D.C.C. § 28–01–46 indicates that a plaintiff need not prove when one of the listed exceptions to the statute applies.

[¶ 36] Further, I do not believe that the Cartwrights have to show that there was no possible medical reason for Tong to remove Cartwright's fallopian tubes, rather than sever them. If the obvious occurrence exception applies, a plaintiff is not required to present expert evidence to support each element of a prima facie case of professional negligence because the obvious occurrence itself is sufficient to support a prima facie case. If this case proceeds onto trial, then Tong would have the opportunity to rebut the Cartwrights' prima face case with evidence that she disregarded Cartwright's consent, as a result of professional judgment. Accordingly, I disagree that, in order to satisfy the obvious occurrence exception within N.D.C.C. § 28–01–46, the Cartwrights had to establish, with expert evidence, that removing Roxane Cartwright's fallopian tubes, rather than severing them, as she requested, qualifies as a deviation from the standard of care. There are no allegations in this case that Tong had a medical reason to perform a different procedure from what was consented to or that Tong informed the Cartwrights, immediately following the procedure, that she had performed a different procedure from what Roxane Cartwright had requested. As such, I believe Roxane Cartwright's allegation that Tong removed her fallopian tubes, instead of severing them, as she requested, qualifies as an obvious occurrence, which alone is sufficient to establish a prima facie case of professional negligence.

[¶ 37] This Court has previously noted: "Section 28–01–46, N.D.C.C., was designed simply to minimize frivolous [malpractice] claims by requiring the plaintiff to obtain an expert opinion supporting [his claims] during [the] early stages of [ ]litigation." *White v. Altru Health System*, 2008 ND 48, ¶ 8, 746 N.W.2d 173 (internal citations and quotations omitted). On the face of the Cartwrights' claim, I believe they have put forth a prima facie case of an obvious occurrence of professional negligence that does not require an expert affidavit under N.D.C.C. § 28–01–46. Further, I do not believe this is the type of claim that N.D.C.C. § 28–01–46 seeks to protect against. As such, I would reverse the district court's decision dismissing the Cartwrights' complaint.

[¶ 38] Accordingly, I respectfully dissent.

[¶ 39] William Herauf, D.J.

Gerald W. VandeWalle, C.J.