Jensen, Justice.
 

 [¶ 1] Dr. Troy Pierce and the Bone & Joint Center ("Petitioners") petition for a supervisory writ following the district court's denial of their motion to dismiss. We grant the Petitioners' request for a supervisory writ and direct the district court to enter a judgment dismissing Robert Carvell's complaint against the Petitioners.
 

 I
 

 [¶ 2] On May 3, 2015, Robert Carvell was injured in a vehicle accident. Carvell arrived at the Emergency Department at St. Alexius Medical Center in Bismarck, where the staff took note of Carvell's injuries. Carvell claims the Petitioners were negligent in failing to treat his fractured and dislocated right middle or third finger. The radiology report from May 3, 2015, provides Carvell's injuries included:
 

 Dislocation of the third metacarpophalangeal [MCP] joint with type II fracture.
 

 Fracture dislocation at the base of the fourth metacarpal.
 

 Dislocation of the fifth carpometacarpal joint.
 

 At that time, an emergency room physician reduced the dislocation of Carvell's right ring finger and applied a splint to Carvell's right hand, wrist, and forearm.
 

 [¶ 3] The following day, Carvell consented to a surgical procedure to be completed at the Bone & Joint Center by Dr. Pierce, which would include "[r]ight elbow open reduction and internal fixation and right long and ring finger open reduction and internal fixation." The diagnosis listed was: "right elbow, long and ring finger fractures." Another document completed by a nurse practitioner provides that Carvell "will undergo open reduction and internal fixation of elbow and open reduction and internal fixation of his third, fourth and fifth metacarpal fractures." Dr. Pierce's surgical report provides:
 

 PREOPERATIVE DIAGNOSES:
 

 Right unstable olecranon process fracture (code 813.04).
 

 Right 4th and 5th metacarpal fracture dislocations (code 815.00).
 

 POSTOPERATIVE DIAGNOSES:
 

 Right unstable olecranon process fracture (code 813.04).
 

 Right 4th and 5th metacarpal fracture dislocations (code 815.00).
 

 Right ulnar nerve compression in the cubital tunnel (code 354.2).
 

 PROCEDURES PERFORMED:
 

 Right olecranon process fracture, open reduction and internal fixation (code 24685).
 

 Right ulnar nerve decompression with anterior subcutaneous transposition (code 64718).
 

 Right 4th metacarpal base fracture dislocation, closed reduction and percutaneous pinning (code 26608-F8).
 

 Right 5th finger metacarpal base fracture dislocation, closed reduction and percutaneous pinning (code 26608-F9).
 

 Dr. Pierce's surgical report also provides:
 

 The CMC fracture dislocations of the 4th and 5th metacarpals were reduced and pinned. One pin from the 5th metacarpal shaft into the hamate and a second pin across the 5th metacarpal through the 4th metacarpal into the 3rd metacarpal. A third pin was placed dorsally into the base of the 4th metacarpal going into the hamate.
 

 Ten days after surgery, Dr. Pierce noted "X-rays of the right hand AP, lateral and oblique show good alignment of the metacarpal fractures with K-wires in good position." Several medical professionals, including occupational and physical therapists,
 were concerned with Carvell's right middle finger swelling and lack of range of motion after the May 2015 surgery.
 

 [¶ 4] Another radiology report from June 2015 provides Carvell had an "[a]nterior dislocation of the third proximal phalanx at the MCP joint, with third metacarpal head fractures.... Nondisplaced intra-articular fracture of the distal hamate, extending into the third and fourth carpometacarpal articulations." The report also notes a "[s]mall anterior avulsion fragment of the third metacarpal head. Nondisplaced fracture of the anterior lateral articular third metacarpal head." Dr. Pierce's report provides that "a CT scan was obtained which shows that [Carvell] has some ulnar deviation and volar ulnar subluxation of his third MCP joint. There is no frank dislocation. At the time of his injury the joint was subluxated, but it was easily reduced in surgery and was kept in a reduced form in the splint until recently." In June 2015, Dr. Pierce performed an additional surgery on Carvell's right hand, where he completed "right third metacarpophalangeal joint open reduction and pinning."
 

 [¶ 5] In April 2017, Carvell commenced an action against the Petitioners, arguing the Petitioners provided improper medical care relating to his fractured middle finger. The Petitioners answered the complaint and denied Carvell's allegations of professional negligence. The Petitioners moved to dismiss Carvell's action in September 2017, arguing Carvell failed to provide an admissible expert opinion within three months, as required by N.D.C.C. § 28-01-46. The Petitioners attached Dr. Pierce's interrogatories to their motion, where he stated, "Because the third finger was not fully dislocated, it was splinted in extension to reduce the metacarpophalangeal joint." The district court denied the Petitioners' motion to dismiss, concluding "[t]he Court agrees that the facts, as alleged and presented to date, support Plaintiff's claim that the alleged medical negligence of Dr. Pierce to fail to address the diagnosed fractures in Plaintiff's third, middle or long finger of his right hand during surgery is an obvious occurrence."
 

 II
 

 [¶ 6] The Petitioners argue this Court should exercise its supervisory jurisdiction because without it, the Petitioners are left without an adequate remedy. Carvell argues the Petitioners have an adequate remedy by going to trial in this case. This Court has stated:
 

 This Court's authority to issue supervisory writs under N.D. Const. art. VI, § 2 and N.D.C.C. § 27-02-04 is a discretionary authority exercised on a case-by-case basis and cannot be invoked as a matter of right. We exercise this discretionary authority rarely and cautiously to rectify errors and prevent injustice in extraordinary cases in which no adequate alternative remedy exists. We generally will decline to exercise our supervisory jurisdiction if the proper remedy is an appeal.
 

 Western Horizons Living Ctrs. v. Feland
 
 ,
 
 2014 ND 175
 
 , ¶ 6,
 
 853 N.W.2d 36
 
 (citations omitted). In
 
 State v. Haskell
 
 ,
 
 2001 ND 14
 
 , ¶ 4,
 
 621 N.W.2d 358
 
 , this Court granted a petition for a supervisory writ after the district court denied a motion to dismiss. In
 
 Haskell
 
 , the State moved to dismiss a wrongful termination claim because the plaintiff failed to file a notice required by statute and because the State could not be sued under the Americans with Disabilities Act without its consent.
 
 Id.
 
 at ¶ 2. The district court denied the State's motion to dismiss because it determined the State could be sued and the plaintiff followed the proper procedure for bringing the action.
 
 Id.
 
 at ¶ 3. The State petitioned for a supervisory writ directing the district court to
 vacate its order.
 
 Id.
 
 This Court determined the case was extraordinary, the district court erred, the State had no adequate alternative remedy, the denial of a motion to dismiss is not appealable, and it could exercise its supervisory jurisdiction.
 
 Id.
 
 at ¶ 4. This Court exercised its supervisory jurisdiction and directed the district court to vacate its order denying the State's motion and to enter an order dismissing the plaintiff's complaint.
 
 Id.
 
 at ¶ 10.
 

 [¶ 7] Like in
 
 Haskell
 
 , Carvell did not file a document required to proceed with litigation, and the district court denied the Petitioners' motion to dismiss. Additionally, as discussed below, the district court erred by denying the Petitioners' motion to dismiss, and the Petitioners have no adequate alternative remedy. As this Court has noted before, supervisory jurisdiction may be warranted where a denial of a "motion to dismiss contradicts North Dakota's statutes and this Court's precedent."
 
 Dimond v. State Bd. of Higher Educ.
 
 ,
 
 1999 ND 228
 
 , ¶ 19,
 
 603 N.W.2d 66
 
 . Further, the statute requiring an expert affidavit in professional negligence cases was enacted to prevent an actual trial in such cases where a medical malpractice plaintiff cannot substantiate a basis for the claim.
 
 Greenwood v. Paracelsus Health Care Corp. of N.D., Inc.
 
 ,
 
 2001 ND 28
 
 , ¶ 8,
 
 622 N.W.2d 195
 
 (citations omitted). Although this issue could be raised on a later appeal, the purpose of the statute is to prevent an actual trial, and the district court's decision was contrary to N.D.C.C. § 28-01-46 and this Court's precedent. Therefore, the Petitioners lack an adequate alternative remedy, and this Court will exercise its supervisory jurisdiction.
 

 III
 

 [¶ 8] The Petitioners argue the district court erred by denying the motion to dismiss because Dr. Pierce's alleged professional negligence does not fall within the exception for an "obvious occurrence." Carvell argues Dr. Pierce forgot to fix the injuries to his middle finger, making this an obvious occurrence not requiring an expert affidavit.
 

 [¶ 9] Section 28-01-46, N.D.C.C., provides:
 

 Any action for injury or death alleging professional negligence by a physician, nurse, hospital, or nursing, basic, or assisted living facility licensed by this state or by any other health care organization, including an ambulatory surgery center or group of physicians operating a clinic or outpatient care facility, must be dismissed without prejudice on motion unless the plaintiff serves upon the defendant an affidavit containing an admissible expert opinion to support a prima facie case of professional negligence within three months of the commencement of the action. The court may set a later date for serving the affidavit for good cause shown by the plaintiff if the plaintiff's request for an extension of time is made before the expiration of the three-month period following commencement of the action. The expert's affidavit must identify the name and business address of the expert, indicate the expert's field of expertise, and contain a brief summary of the basis for the expert's opinion.
 
 This section does not apply to unintentional failure to remove a foreign substance from within the body of a patient, or performance of a medical procedure upon the wrong patient, organ, limb, or other part of the patient's body, or other obvious occurrence.
 

 (Emphasis added). It is undisputed N.D.C.C. § 28-01-46 is the applicable statute, and Carvell did not file an expert witness affidavit within three months of commencing the action.
 

 [¶ 10] This Court has declined to address the appropriate standard of review when a plaintiff in a professional negligence action fails to provide an expert opinion as required by N.D.C.C. § 28-01-46.
 
 Haugenoe v. Bambrick
 
 ,
 
 2003 ND 92
 
 , ¶ 9,
 
 663 N.W.2d 175
 
 . We conclude the district court's decision on whether the obvious occurrence exception applies under N.D.C.C. § 28-01-46 is a mixed question of fact and law.
 

 [¶ 11] "In reviewing a mixed question of fact and law, the underlying predicate facts are treated as findings of fact, and the conclusion whether those facts meet the legal standard is a question of law."
 
 Workforce Safety & Ins. v. Larry's On Site Welding
 
 ,
 
 2014 ND 81
 
 , ¶ 14,
 
 845 N.W.2d 310
 
 . Questions of law and statutory interpretation are fully reviewable on appeal.
 
 Scheer v. Altru Health Sys.
 
 ,
 
 2007 ND 104
 
 , ¶ 16,
 
 734 N.W.2d 778
 
 . Findings of fact must not be set aside unless clearly erroneous. N.D.R.Civ.P. 52(a)(6).
 

 A finding of fact is clearly erroneous under N.D.R.Civ.P. 52(a) if it is not supported by any evidence, if, although there is some evidence to support the finding, a reviewing court is left with a definite and firm conviction a mistake has been made, or if the finding is induced by an erroneous conception of the law.
 

 WFND, LLC v. Fargo Marc, LLC
 
 ,
 
 2007 ND 67
 
 , ¶ 13,
 
 730 N.W.2d 841
 
 (citation omitted).
 

 [¶ 12] Words in a statute are to be understood in their ordinary sense, unless a contrary intention appears. N.D.C.C. § 1-02-02. This Court has noted:
 

 Under the rule of
 
 ejusdem generis
 
 , when general words follow specific words in a statutory enumeration, the general words are construed to embrace only objects similar in nature to those objects specifically enumerated. The word "obvious" means "easily understood; requiring no thought or consideration to understand or analyze; so simple and clear as to be unmistakable."
 

 Larsen v. Zarrett
 
 ,
 
 498 N.W.2d 191
 
 , 194 (N.D. 1993) (citations omitted). Related to N.D.C.C. § 28-01-46, this Court has stated:
 

 The purpose of this requirement is to "screen[ ] ... totally unsupported claims and ... to prevent protracted litigation when a medical malpractice plaintiff cannot substantiate a basis for the claim."
 
 Van Klootwyk v. Baptist Home, Inc.
 
 ,
 
 2003 ND 112
 
 , ¶ 10,
 
 665 N.W.2d 679
 
 (citation omitted).
 

 To establish a prima facie case of medical negligence, a plaintiff must produce "expert evidence establishing the applicable standard of care, violation of that standard, and a causal relationship between the violation and the harm complained of."
 
 Scheer v. Altru Health Sys.
 
 ,
 
 2007 ND 104
 
 , ¶ 18,
 
 734 N.W.2d 778
 
 . However, expert testimony is not required "to establish a duty, the breach of which is a blunder so egregious that a layman is capable of comprehending its enormity."
 
 Haugenoe v. Bambrick
 
 ,
 
 2003 ND 92
 
 , ¶ 10,
 
 663 N.W.2d 175
 
 (quotation omitted);
 
 see also
 
 N.D.C.C. § 28-01-46. This " 'obvious occurrence' exception applies only to cases that are plainly within the knowledge of a layperson. In an 'obvious occurrence' case, expert testimony is unnecessary precisely because a layperson can find negligence without the benefit of an expert opinion."
 
 Larsen v. Zarrett
 
 ,
 
 498 N.W.2d 191
 
 , 195 (N.D. 1993).
 

 Johnson v. Bronson
 
 ,
 
 2013 ND 78
 
 , ¶¶ 11-12,
 
 830 N.W.2d 595
 
 . The plain language of N.D.C.C. § 28-01-46 requires dismissal unless an exception applies.
 
 Scheer
 
 ,
 
 2007 ND 104
 
 , ¶ 22,
 
 734 N.W.2d 778
 
 .
 

 [¶ 13] This Court has consistently noted the importance of an expert affidavit in professional negligence cases.
 
 Johnson v. Mid Dakota Clinic, P.C.
 
 ,
 
 2015 ND 135
 
 , ¶ 11,
 
 864 N.W.2d 269
 
 ;
 
 Haugenoe
 
 ,
 
 2003 ND 92
 
 , ¶¶ 10-11,
 
 663 N.W.2d 175
 
 ;
 
 Ellefson v. Earnshaw
 
 ,
 
 499 N.W.2d 112
 
 , 114 (N.D. 1993) ;
 
 Heimer v. Privratsky
 
 ,
 
 434 N.W.2d 357
 
 , 359-60 (N.D. 1989) ;
 
 Fortier v. Traynor
 
 ,
 
 330 N.W.2d 513
 
 , 517 (N.D. 1983) ("If we recognize, as we must, that it does not require a genius to draft a complaint it becomes apparent that more is needed than a mere allegation of negligence in a malpractice action.");
 
 Winkjer v. Herr
 
 ,
 
 277 N.W.2d 579
 
 , 583-84 (N.D. 1979). Generally, technical surgical procedures are recognized as beyond the understanding of a layperson.
 
 Larsen
 
 ,
 
 498 N.W.2d at 195
 
 . To apply the obvious occurrence exception to the affidavit requirement, "the occurrence that led to the result, not the result itself, must be obvious."
 
 Greene v. Matthys
 
 ,
 
 2017 ND 107
 
 , ¶ 14,
 
 893 N.W.2d 179
 
 .
 

 [¶ 14] This Court has repeatedly affirmed district court dismissals or summary judgments of professional negligence cases where the plaintiffs failed to file an expert affidavit.
 
 Cartwright v. Tong
 
 ,
 
 2017 ND 146
 
 , ¶ 14,
 
 896 N.W.2d 638
 
 ;
 
 Greene
 
 ,
 
 2017 ND 107
 
 , ¶¶ 13-15,
 
 893 N.W.2d 179
 
 ;
 
 Haugenoe
 
 ,
 
 2003 ND 92
 
 , ¶ 11,
 
 663 N.W.2d 175
 
 . In
 
 Cartwright
 
 , at ¶ 13, the plaintiff argued the removal of fallopian tubes fell within the obvious occurrence exception. However, this Court concluded the district court did not err in determining the removal versus tying of fallopian tubes was not an obvious occurrence, was beyond the common understanding of a layperson, and therefore required expert testimony to establish the standard of care.
 
 Id.
 
 at ¶ 14. Similarly, in
 
 Greene
 
 , at ¶ 14, the alleged occurrence of professional negligence took place during a hip surgery, which this Court concluded was a technical procedure beyond the understanding of a layperson. This Court concluded the obvious occurrence exception did not apply, and the district court properly dismissed the professional negligence claims.
 
 Id.
 
 at ¶¶ 14-16.
 

 [¶ 15] In
 
 Winkjer
 
 , this Court concluded the defendant ophthalmologist's reliance on factors in the diagnosis and treatment of the plaintiff's glaucoma"were not those commonly susceptible of understanding by a lay person without the assistance of expert medical testimony."
 
 277 N.W.2d at 586-87
 
 . The defendant first diagnosed the plaintiff with glaucoma and prescribed a medication for that condition, and the plaintiff argued the defendant's diagnosis and treatment were negligent because he actually had ocular hypertension.
 

 Id.
 

 at 584
 
 . The plaintiff argued the diagnosis and treatment were blunders so egregious a layperson was capable of comprehending the enormity without expert testimony.
 

 Id.
 

 at 585
 
 . This Court affirmed the district court granting summary judgment to the defendant and concluded the defendant's alleged negligence was not understandable by a layperson.
 

 Id.
 

 at 586-87, 589
 
 .
 

 [¶ 16] In
 
 Haugenoe
 
 , the plaintiff was treated for a compound fracture of his right elbow and a fracture of his right wrist.
 
 2003 ND 92
 
 , ¶ 3,
 
 663 N.W.2d 175
 
 . The defendant performed an open reduction and internal fixation of the elbow.
 

 Id.
 

 After surgery, the defendant said the elbow was properly aligned, but a second opinion from a different doctor indicated the elbow was misaligned.
 

 Id.
 

 The plaintiff commenced an action in May 2001 and did not file an admissible expert affidavit for over a year.
 
 Id.
 
 at ¶¶ 4-6. In July 2002, the district court granted the defendant's motion to dismiss because the plaintiff did not supply an admissible expert opinion, and the obvious occurrence exception did not apply because the open reduction and internal fixation are beyond the understanding of a layperson and required expert
 testimony to explain the complicated technical surgical procedure.
 
 Id.
 
 at ¶ 7. This Court affirmed the dismissal, concluding the plaintiff failed to meet the requirements of N.D.C.C. § 28-01-46 as a matter of law, and technical surgical procedures, like the one performed, are generally beyond the understanding of a layperson.
 
 Id.
 
 at ¶ 11.
 

 [¶ 17] We conclude the district court should not have applied the obvious occurrence exception in this case because the alleged occurrence of professional negligence is not plainly within the knowledge of a layperson, and a layperson could not find negligence without the benefit of expert testimony. Carvell correctly argues the medical records indicated his middle finger was fractured and required repair. Carvell has over-simplified his injuries and the technical surgical procedure completed by Dr. Pierce. Although Carvell's injuries warranted a second surgery, the occurrence itself must have been obvious, not the result.
 
 Greene
 
 ,
 
 2017 ND 107
 
 , ¶ 14,
 
 893 N.W.2d 179
 
 . As discussed above, this Court has noted several times that occurrences of alleged professional negligence during technical surgical procedures typically fall outside the obvious occurrence exception. Like
 
 Haugenoe
 
 , this case involves the reduction and fixation of joints involving a technical surgical procedure beyond the understanding of a layperson. Dr. Pierce's interrogatory answer and the report following surgery indicate he splinted Carvell's injured middle finger instead of utilizing a surgical repair. As in
 
 Winkjer
 
 , determining the appropriate treatment for Carvell's middle finger, whether by splinting or by a surgical procedure, are matters of diagnosis and treatment not commonly susceptible of understanding by a layperson without the assistance of an expert witness. Additionally, under the rule of ejusdem generis, when the general words are construed to embrace only objects similar in nature to those objects specifically enumerated, the occurrence alleged here is not like the failure to remove a foreign substance from the body of a patient or performance of a medical procedure upon the wrong patient, organ, or limb.
 

 [¶ 18] We are left with a definite and firm conviction the district court clearly erred in concluding the obvious occurrence exception contained within N.D.C.C. § 28-01-46 applied. Dr. Pierce's interrogatory answer and the report following the May 2015 surgery clearly established the alleged professional negligence occurred during a technical surgical procedure outside the plain knowledge of a layperson. Because the obvious occurrence exception applies only to cases that are plainly within the knowledge of a layperson, the district court erred in its factual determination that the exception applied. In the absence of an obvious occurrence, the district court erred as a matter of law in denying the Petitioners' motion to dismiss.
 

 IV
 

 [¶ 19] We grant the Petitioners' request for a supervisory writ and direct the district court to enter a judgment dismissing Carvell's complaint against the Petitioners.
 

 [¶ 20] Jon J. Jensen
 

 Lisa Fair McEvers
 

 Daniel J. Crothers
 

 Jerod E. Tufte
 

 Gerald W. VandeWalle, C.J.