# IN THE SUPREME COURT
# STATE OF NORTH DAKOTA

2019 ND 133

Nancy Ortega,          Plaintiff and Appellant

v.

Sanford Bismarck, Christie Iverson, M.D.,      Defendants and Appellees

No. 20180331

Appeal from the District Court of Burleigh County, South Central Judicial District, the Honorable Thomas J. Schneider, Judge.

REVERSED AND REMANDED.

Opinion of the Court by Jensen, Justice.

Scott A. Hager, Bismarck, ND, for plaintiff and appellant.

Briana L. Rummel (argued) and Brenda L. Blazer (appeared), Bismarck, ND, for defendants and appellees.

**Jensen, Justice.**

[¶1]    Nancy Ortega appeals from a district court order granting summary judgment, dismissing her professional negligence claim against Sanford Bismarck and Dr. Christie Iverson without prejudice. We conclude the court erred in applying N.D.C.C. § 28-01-46 to grant summary judgment. We reverse and remand for further proceedings.

I

[¶2]    In June 2014, Ortega was seen at Sanford Bismarck because of pain in her upper right abdomen and right flank. Ortega had a CT scan of her abdomen and pelvic area, which revealed a right ovarian dermoid tumor. After Ortega was referred, Dr. Iverson performed surgery on her in August 2014, to remove her left ovary. The surgery included a hysterectomy, bilateral salpingectomy, left oophorectomy, and lysis of adhesions. In October 2014, Dr. Iverson performed a second surgery on Ortega to remove her right ovary.

[¶3]    In August 2016, Ortega commenced this action against Sanford and Dr. Iverson, alleging claims for professional negligence. She alleges that while she presented for surgery in August 2014 to have her right ovary removed due to a dermoid tumor, Dr. Iverson negligently removed her left ovary. She alleges the defendants' acts and omissions proximately caused the incorrect ovary to be removed and caused damages directly and proximately resulting from their negligent acts and omissions. The defendants answered, denying any act of theirs caused her claimed damages and denying Ortega was damaged in the manner or to the extent she claimed.

[¶4]    In May 2018, Sanford and Dr. Iverson moved the district court for summary judgment, arguing that Ortega's negligence claim fails because she cannot establish a causal relationship between the defendants' alleged conduct and the harm

complained of absent expert testimony. They also argued her negligence claim fails because she cannot establish she suffered any damages. Ortega opposed the motion.

[¶5]    In July 2018, the district court granted summary judgment and dismissed the case without prejudice. Although not argued by the defendants in their summary judgment motion, the court held Ortega failed to file an admissible expert opinion supporting a prima facie medical malpractice claim within three months of commencing the action, as required under N.D.C.C. § 28-01-46. The court held Dr. Iverson's removal of the ovary was not an "obvious occurrence" precluding application of N.D.C.C. § 28-01-46. The court further concluded, "Although the procedure was not consented to, Dr. Iverson's actions did not constitute a procedure on the 'wrong organ,'" and therefore the "wrong organ" exception in N.D.C.C. § 28-01-46 did not apply.

II

[¶6]    "Generally, an order dismissing a complaint without prejudice is not appealable." *James Vault & Precast Co. v. B&B Hot Oil Serv., Inc.*, 2018 ND 63, ¶ 10, 908 N.W.2d 108 (quoting *Sanderson v. Walsh Cty.*, 2006 ND 83, ¶ 5, 712 N.W.2d 842). "A dismissal without prejudice may be final and appealable, however, if the dismissal has the practical effect of terminating the litigation in the plaintiff's chosen forum." *James Vault & Precast*, at ¶ 10 (citing *Haugenoe v. Bambrick*, 2003 ND 92, ¶ 2, 663 N.W.2d 175). "[W]here a statute of limitations has run, the dismissal of an action without prejudice 'effectively forecloses litigation in the courts of this state.'" *James Vault & Precast*, at ¶ 10 (quoting *Haugenoe*, at ¶ 2). "A dismissal without prejudice is therefore appealable where a statute of limitations has run." *James Vault & Precast*, at ¶ 10.

[¶7]    "The three-month requirement to provide an admissible expert opinion affidavit 'operates within the confines of a two-year statute of limitations for medical malpractice claims.'" *Cartwright v. Tong*, 2017 ND 146, ¶ 6, 896 N.W.2d 638 (quoting *Scheer v. Altru Health Sys.*, 2007 ND 104, ¶ 11, 734 N.W.2d 778). "[T]he

2

two-year statute of limitations begins to run when the plaintiff knows, or with reasonable diligence should know, of (1) the injury, (2) its cause, and (3) the defendant's possible negligence." *Cartwright*, at ¶ 6 (quoting *Scheer*, at ¶ 11).

[¶8]     According to Ortega's complaint, she alleges she presented to Dr. Iverson at Sanford to have a surgery to remove her right ovary on or about August 14, 2014, and alleges Dr. Iverson negligently removed her left ovary.  It is undisputed a second surgery was performed on October 2, 2014, to remove Ortega's right ovary.  The district court entered its order dismissing Ortega's complaint on July 11, 2018.  Although Ortega appealed from the order, a subsequent consistent judgment of dismissal without prejudice was entered on July 12, 2018. *See Farmers Union Oil Co. v. Smetana*, 2009 ND 74, ¶ 7, 764 N.W.2d 665 ("An order granting summary judgment is not appealable[; however, an] attempted appeal from the order granting summary judgment will . . . be treated as an appeal from a subsequently entered consistent judgment, if one exists.").  We conclude on the undisputed facts the judgment was entered after the two-year statute of limitations had run, effectively foreclosing future litigation.  The judgment dismissing her complaint without prejudice is therefore appealable.

## III

[¶9]     Our standard for reviewing summary judgment is well established:

> Summary judgment is a procedural device for the prompt resolution of a controversy on the merits without a trial if there are no genuine issues of material fact or inferences that can reasonably be drawn from undisputed facts, or if the only issues to be resolved are questions of law.  A party moving for summary judgment has the burden of showing there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law.  In determining whether summary judgment was appropriately granted, we must view the evidence in the light most favorable to the party opposing the motion, and that party will be given the benefit of all favorable inferences which can reasonably be drawn from the record.

*Johnson v. Bronson*, 2013 ND 78, ¶ 9, 830 N.W.2d 595 (citation omitted).

3

[¶10] Under N.D.R.Civ.P. 56, summary judgment is appropriate when a party, who bears the burden of proof at trial, fails to establish the existence of a material factual dispute on an essential element of the claim. *Bronson*, 2013 ND 78, ¶ 9, 830 N.W.2d 595. In resisting a summary judgment motion, when a party presents no pertinent evidence on an essential element, it is presumed no such evidence exists. *Id.* Whether a district court properly granted summary judgment is a question of law, reviewed de novo on the entire record. *Id.* "Summary judgment is rarely appropriate in negligence actions." *Arneson v. City of Fargo*, 303 N.W.2d 515, 517 (N.D. 1981).

IV

[¶11] Ortega argues the district court erred in granting summary judgment on an issue not raised in the defendants' summary judgment motion. She contends the court erred because none of the parties had argued, briefed, or made a motion on whether N.D.C.C. § 28-01-46 applied.

[¶12] In their summary judgment motion, Sanford and Dr. Iverson argued that Ortega cannot establish a causal relationship between their alleged conduct and the harm complained of without expert testimony. They asserted that it was undisputed Ortega had not produced an expert, aside from identifying Dr. Iverson as a treating physician, to support her professional negligence claim and that expert testimony was "required in this case to establish a causal relationship between the second surgery performed by Dr. Iverson on October 2, 2014 and Ortega's alleged symptoms, symptoms which by her own testimony predate the October 2, 2014 surgery."

[¶13] Sanford and Dr. Iverson contended that, aside from her own testimony, Ortega failed to provide any other evidence to support her contention that the second surgery caused symptoms commonly associated with menopause that she now claims. They asserted that her own testimony established her symptoms were pre-existing; she made no allegations the defendants' conduct aggravated these issues, including her alleged moodiness and lack of motivation; and medical records supported the contention that Ortega's symptoms predated the second surgery. They contended she

4

failed to create a causal connection between her alleged symptoms and the defendants' conduct, notwithstanding her lack of expert testimony.

[¶14] Sanford and Dr. Iverson asserted Dr. Iverson advised Ortega before the second surgery in October 2014 that the removal of the right ovary would result in surgical menopause, which may cause worse symptoms, such as hot flashes and mood swings, than natural menopause. They asserted Dr. Iverson explained surgical menopause may lead to serious health issues such as elevated cholesterol, heart disease, lessening of bone density, osteoporosis, and may shorten her life span due to these diseases. Dr. Iverson recommended she go on hormone replacement therapy to lessen the menopause symptoms and associated diseases until the age of fifty. They provided evidence that Ortega was, at most, two or three years from fully experiencing natural menopause and that her self-described symptoms expressed to Dr. Iverson in July 2014 are consistent with perimenopause.

[¶15] In their summary judgment motion, Sanford and Dr. Iverson also argued that Ortega had failed to establish any damages to support her claim of professional negligence. For example, they asserted she failed to provide a detailed computation of her economic damages, she was not charged for the second surgery in October 2014, and evidence showed she was working more regular and consistent hours following the second surgery than she was before the first surgery.

[¶16] Rather than address the arguments in the defendants' summary judgment motion, the district court dismissed Ortega's complaint ruling that under N.D.C.C. § 28-01-46, "Ortega was required, but failed, to file an affidavit containing admissible expert opinion supporting a prima facie case of medical malpractice." Section 28-01-46, N.D.C.C., requires a plaintiff, within three months of commencing a medical negligence action, to provide an affidavit containing an admissible expert opinion to support a prima facie case, except in obvious cases, providing:

> Any action for injury or death alleging professional negligence by a physician, nurse, hospital, or nursing, basic, or assisted living facility licensed by this state or by any other health care organization, including an ambulatory surgery center or group of physicians operating a clinic or outpatient care facility, must be dismissed without prejudice on

5

motion unless the plaintiff serves upon the defendant an affidavit containing an admissible expert opinion to support a prima facie case of professional negligence within three months of the commencement of the action. The court may set a later date for serving the affidavit for good cause shown by the plaintiff if the plaintiff's request for an extension of time is made before the expiration of the three-month period following commencement of the action. The expert's affidavit must identify the name and business address of the expert, indicate the expert's field of expertise, and contain a brief summary of the basis for the expert's opinion. This section does not apply to unintentional failure to remove a foreign substance from within the body of a patient, or performance of a medical procedure upon the wrong patient, organ, limb, or other part of the patient's body, or other obvious occurrence.

(Emphasis added.)

[¶17] Under N.D.C.C. § 28-01-46, "[t]he purpose of this [affidavit] requirement is to 'screen[] . . . totally unsupported claims and . . . to prevent protracted litigation when a medical malpractice plaintiff cannot substantiate a basis for the claim.'" *Pierce v. Anderson*, 2018 ND 131, ¶ 10, 912 N.W.2d 291 (quoting *Bronson*, 2013 ND 78, ¶ 11, 830 N.W.2d 595 (citation omitted)). To establish a prima facie case of medical negligence,

> a plaintiff must produce expert evidence establishing the applicable standard of care, violation of that standard, and a causal relationship between the violation and the harm complained of. However, expert testimony is not required to establish a duty, the breach of which is a blunder so egregious that a layman is capable of comprehending its enormity. This "obvious occurrence" exception applies only to cases that are plainly within the knowledge of a layperson. In an "obvious occurrence" case, expert testimony is unnecessary precisely because a layperson can find negligence without the benefit of an expert opinion.

*Pierce*, at ¶ 12 (quoting *Bronson*, at ¶ 12) (citations and quotation marks omitted) (emphasis added). This Court recognized that technical surgical procedures are beyond a layperson's understanding. *Pierce*, at ¶ 13. "To apply the obvious occurrence exception to the affidavit requirement, 'the occurrence that led to the result, not the result itself, must be obvious.'" *Id.* (quoting *Greene v. Matthys*, 2017 ND 107, ¶ 14, 893 N.W.2d 179) (emphasis added). A district court's decision on

6

whether the obvious occurrence exception applies under N.D.C.C. § 28-01-46 is a mixed question of fact and law. *Pierce*, at ¶ 10.

[¶18] It is undisputed that Sanford and Dr. Iverson did not move for summary judgment on the basis of N.D.C.C. § 28-01-46. This Court has previously cautioned district courts granting summary judgment on grounds not raised by the parties. In *Jaste v. Gailfus*, 2004 ND 94, ¶¶ 11-12, 679 N.W.2d 257, we explained:

> In determining whether summary judgment is appropriate, the court is not confined to the particular propositions of law advanced by the parties on a motion for summary judgment. 10A Charles A. Wright et al., *Federal Practice and Procedure* § 2725 (3d ed. 1998).
>
> Courts should be cautious, however, when granting summary judgment on propositions of law that were not advanced by the parties. 10A Charles A. Wright et al., *Federal Practice and Procedure* § 2725 (3d ed. 1998). There is a greater possibility for error when the party opposing the summary judgment motion may be able to show that a genuine issue exists but has not done so because the facts relating to the particular legal principles were not in issue. *Id.* A court should notify the parties when it intends to rely on a legal doctrine or precedents other than those briefed and argued by the litigants. *Id.*; *see also* James Wm. Moore, *Moore's Federal Rules Pamphlet* § 56.4[2] (2004) (a court must give the party against whom the court is considering granting the judgment an opportunity to respond when the judgment is considered on a sua sponte basis) (citing *Walker v. Missouri Department of Corrections*, 138 F.3d 740, 742 (8th Cir. 1998) (the district court's grant of summary judgment on a ground not raised in the summary judgment motion was reversed because the plaintiff was not given notice and opportunity to contest the issues)).

We further explained, however, that "[t]he failure of the court to provide notice can be excused if the error was harmless under the circumstances." *Jaste*, at ¶ 13 (citing James Wm. Moore, *Moore's Federal Rules Pamphlet* § 56.4[2] (2004)).

[¶19] In this case, however, Sanford and Dr. Iverson have not asserted Ortega's claims were barred by N.D.C.C. § 28-01-46, and they concede the statute would not apply. Under these facts and circumstances, we conclude the district court erred in applying N.D.C.C. § 28-01-46 to grant summary judgment. We therefore reverse and remand the case for further proceedings.

[¶20]  Sanford and Dr. Iverson invite this Court to rule on the same issues they raised in the district court, requesting us to affirm the district court's dismissal because the court reached the right result.  The issues raised on appeal, however, have not been addressed by the district court and would otherwise not have been appealable until entry of a final judgment.  We decline to issue an advisory opinion on whether expert testimony is required in this case to establish causation.  *See White v. Altru Health Sys.*, 2008 ND 48, ¶ 19, 746 N.W.2d 173 (declining to provide advisory opinions); *State v. Hansen*, 2006 ND 139, ¶ 7, 717 N.W.2d 541 (same).

V

[¶21]  The order and judgment of dismissal are reversed.  The case is remanded for further proceedings consistent with this opinion.

[¶22]  Jon J. Jensen
        Lisa Fair McEvers
        Daniel J. Crothers
        Jerod E. Tufte
        Gerald W. VandeWalle, C.J.